### John BROCKHOUSE, Plaintiff,

v.

### UNITED STATES of America, Defendant.

### No. 82 C 3899.

United States District Court, N.D. Illinois, E.D.

May 18, 1983.

John Brockhouse, pro se.

Eileen M. Marutzky, U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff, John Brockhouse ("Brockhouse"), has brought this *pro se* action against the United States of America ("United States") seeking a refund of $15.00 paid toward the satisfaction of a $100.00 tax preparer penalty assessed against him by the Internal Revenue Service ("IRS"). The penalty was imposed on Brockhouse, a Certified Public Accountant, under 26 U.S.C. § 6694(a) ("section 6694(a)") for his alleged "negligent or intentional disregard of rules and regulations" regarding the preparation of the 1978 individual income tax return of Robert and Sarah Busch. The jurisdiction of this court is invoked pursuant to 28 U.S.C.

§ 1346(a)(1).[1] Currently pending are the parties' cross-motions for summary judgment.

The facts giving rise to this action have been stipulated by the parties, and may be briefly summarized. Plaintiff Brockhouse became an Illinois Certified Public Accountant on March 18, 1964, and has practiced public accounting in Chicago since June, 1965. In January, 1979, he was hired by the CPA firm of Goldman, Weiss, Gelman & Sered ("Goldman, Weiss"). For several years, Goldman, Weiss had prepared the income tax returns of Rubert-Busch, M.D., S.C. ("Rubert-Busch"), an Illinois professional corporation engaged in forensic medicine, and those of Dr. Robert Busch, the corporation's sole shareholder. Plaintiff's first contacts with the tax affairs of these clients, however, was not until March, 1979.

According to the stipulation, Goldman, Weiss had "adopted the practice" (¶ 10) of sending a data questionnaire to its individual income tax clients which was to be completed by the client and returned to the firm or used by the client as a guide in collecting the information necessary for the firm to prepare the returns. Such a questionnaire was not utilized, however, in preparing the 1978 return of Dr. and Mrs. Busch. Instead, the information necessary to prepare the return was supplied to Brockhouse by Rubert-Busch's bookkeeper. The information was then entered on input sheets of an outside computer service bureau. These sheets were reviewed by Brockhouse, who compared the entries with the data submitted by the client and the information shown on the prior year's return. There were no items shown on the prior year's return which were not accounted for in the preparation of the 1978 individual return. The 1978 returns were eventually signed by Brockhouse, delivered to the bookkeeper and then given to Dr. Busch.

The corporate return of Rubert-Busch for the fiscal year ending February 29, 1979, was the first such return prepared by Brockhouse. For this return, the bookkeeper completed a trial balance sheet, which was then submitted to Goldman, Weiss. This trial balance sheet showed payments for interest expense by Rubert-Busch, but did not indicate to whom these payments were submitted. Since it was not necessary to list the names of the recipients of the interest payments in the corporate return, plaintiff did not make any such inquiries. According to the stipulation, the interest expenses incurred by Rubert-Busch arose from the company's periodic need to borrow funds, which in turn stemmed from the fact that expenses were often paid several years prior to the collection of revenues. While the necessary funds were usually secured from the Michigan Avenue National Bank, Rubert-Busch had begun to borrow from Dr. Busch as interest rates rose in the late 1970's.

In May, 1980, Jolynn Cogdill ("Cogdill"), an IRS agent, began an examination of the corporate return of Rubert-Busch for the fiscal year ending February 28, 1979. In connection with this examination, Cogdill requested and received copies of Dr. Busch's 1978 and 1979 individual returns. The corporation's interest expense account was one of several for which Cogdill requested an analysis. Brockhouse proceeded to examine the general ledger and disbursements journal, and discovered that interest had been paid not only to Michigan Avenue National Bank but also to Dr. Busch. The latter had received interest in the amount of $15,291.20 in 1978, and $21,396.17 in 1979, none of which had been included as income in Dr. Busch's individual returns. Brockhouse reported these omissions to Cogdill at their next meeting,

---

**1.** 28 U.S.C. § 1346 provides:

"(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws; ...."

and explained that one of the reasons for his failing to include the interest paid was that no similar item had appeared on Dr. Busch's 1977 individual return.

At meetings held in December, 1980, and February, 1981, in connection with the audit of Dr. Busch's 1978 and 1979 individual returns, Cogdill proposed to assess Dr. Busch a 50% penalty under 26 U.S.C. § 6653(b) because of his failure to include as income the interest paid to him during 1978 and 1979 by the corporation. At the February meeting, Brockhouse argued against the penalty, stating: "If anyone is negligent, I'm the one." The proposed penalty against Dr. Busch was later dropped entirely with respect to 1978, and reduced to a 5% penalty with respect to 1979.

On December 17, 1981, a $100.00 tax preparer penalty with respect to the 1978 return was assessed against Brockhouse. Pursuant to 26 U.S.C. § 6694(c), $15.00 was paid by Brockhouse. He then filed a Claim for Refund, which was disallowed on June 15, 1982. On June 22, 1982, Brockhouse filed the instant complaint. The United States subsequently filed a counterclaim for the remaining unpaid balance of the 1978 penalty; it also sought to reduce to judgment a penalty assessed against Brockhouse on June 24, 1982, for his preparation of Dr. Busch's 1979 return. The 1979 penalty has now been paid in full, and the United States has agreed to dismiss its counterclaim, without prejudice, with respect to both 1978 and 1979.

The sole question presented in this action is whether Brockhouse is entitled to have the penalty levied against him pursuant to section 6694(a) set aside and his $15.00 refunded. The starting point for evaluating this issue is the actual language of section 6694(a), which provides:

"If any part of any understatement of liability with respect to any return or claim for refund is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $100 with respect to such return or claim."

26 U.S.C. § 6694(a). Section 6694(e), 26 U.S.C. § 6694(e), provides that an "understatement of liability" means any understatement of the net amount payable with respect to any income tax. Section 1.6694–1(a)(1) of the Income Tax Regulations, 26 C.F.R. § 1.6694–1(a)(1), provides that a preparer is not considered to have negligently or intentionally disregarded a rule or regulation if he exercises due diligence in an effort to apply the rules and regulations to the information given to him to determine the taxpayer's correct tax liability. Section 1.6694–1(a)(5) of the Regulations, 26 C.F.R. § 1.6694–1(a)(5), provides that the preparer bears the burden of proof on the issue of whether he has negligently or intentionally disregarded a rule or regulation.

The application of section 6694(a) is further explained by several IRS Revenue Rulings. For example, Revenue Ruling 80–28, Rev.Rul. 80–28, 1980–1 C.B. 304, provides that negligence under this section is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Another ruling, Rev.Proc. 80–40, 1980–2 C.B. 774, provides that the following factors should be considered in applying the negligence standard under section 6694(a): (1) nature of the error causing the understatement; (2) frequency of errors; and (3) materiality of errors. Rev.Proc. 80–40 also explains that where the facts and circumstances suggest that the return was negligently prepared, the penalty will not be asserted if (1) the preparer's normal office practice, when considered together with the other facts and circumstances, indicates that the error in question would rarely occur, and (2) the normal office practice was followed in preparing the return in question. Finally, Rev.Proc. 80–40 states that while a preparer is not required to audit or examine books, records or other evidence in order to independently verify a taxpayer's information, he may not ignore the implications of information furnished to him or which was actually known by him. The preparer is instructed to make reasonable inquiries if

the information furnished appears to be incorrect or incomplete.

■ Based on the language of section 6694(a) and its interpretation in the above-noted Income Tax Regulations and Revenue Rulings, the court concludes that entry of summary judgment in favor of the United States is appropriate. Given the information available to Brockhouse, the omission of interest income on Dr. Busch's 1978 return constitutes a failure to exercise due diligence. First, the method of operation of Rubert-Busch's business indicated that the corporation often found it necessary to borrow funds and that, because of rising interest rates, the funds were borrowed from Dr. Busch, the corporation's sole shareholder. Second, the trial balance sheet utilized by Brockhouse in computing Rubert-Busch's corporate return showed that the corporation had made interest payments. While the balance sheet did not reveal the recipient of those payments, it was a practice of Rubert-Busch, as noted above, to borrow from Dr. Busch. Third, the general ledger and disbursements journal of the corporation—which, upon reasonable request, would have been available to Brockhouse for inspection—specifically indicated that interest had been paid to Dr. Busch. Under these circumstances, a reasonable and ordinarily prudent person would have been alerted to the fact that Rubert-Busch was paying interest to Dr. Busch. Based on the implications of information available to him, Brockhouse should have made the inquiries necessary to determine the full scope of the interest payments. Indeed, Brockhouse himself recognized the importance of making such inquiries in a 1979 article in which he stated: "This sentence [that a preparer may not ignore the implications of information furnished to him] seemed to place a positive burden on preparers to use competent judgment in evaluating a taxpayer's data and to ask reasonable questions if the information appeared to be incomplete or incorrect." Brockhouse, *IRS Is Taking a Practical Line in Enforcing Compliance with Return Preparer Regs*, The Journal of Taxation, 172, 174 (September 1979).

Also illustrative of Brockhouse's lack of due diligence in preparing Dr. Busch's 1978 return is his failure to follow procedures which both Goldman, Weiss as an accounting firm and he as an individual accountant recognized as necessary to obtain complete information from a taxpayer. As previously noted, Goldman, Weiss had "adopted a practice" (Stipulation, ¶ 10) of sending a data questionnaire to its clients as a means of collecting information, a practice not utilized in preparing Dr. Busch's 1978 return. Brockhouse's failure to use such a questionnaire is particularly disturbing in light of his own emphasis on its significance. For example, in a 1981 article, Brockhouse stated:

"Examples of good office procedures include a system to promote accuracy and consistency in the preparation of returns. The system might include a preparation checklist, a method for obtaining the necessary information from the taxpayer, examination of prior returns and review procedures....

"The procedures listed in *Rev.Proc.* 80–40—having a checklist and a questionnaire to insure completeness of taxpayer information ... would appear to be more stringent than procedures which the courts have applied in deciding cases involving taxpayer negligence under Section 6653(a). However, they appear to be reasonable steps for most tax preparers to take."

Brockhouse, *Under the New Rules, Preparer Penalties May be Restricted to More Flagrant Violations*, The Journal of Taxation, 2, 4 (January 1981). In another article, Brockhouse explained what he referred to as "Work-flow procedures":

"[T]he start of the return preparation process is the mailing of data questionnaires to its [an accounting firm's] clients.... Checklists can be prepared for individuals at each stage of the preparation process.

"These checklists will serve two purposes. First, if properly used by the firm's personnel they will assist in improving the quality of the returns prepar-

ed and reduce penalty exposure. In addition, they may be useful in demonstrating to IRS personnel, in accordance with *Rev.Proc.* 80–40, that the firm's procedures were not negligent."

Brockhouse, *Steps that Accountants Can Take Now to Reduce Exposure to the Return Preparer Penalties,* Taxation for Accountants, 140 (March 1981). Thus, while Brockhouse himself clearly recognized the need to send data questionnaires to clients for use in preparing their returns, he failed to adhere to this procedure in the case at bar.

▆▆▆ Finally, evaluation of the factors outlined in Rev.Proc. 80–40 plainly indicates that Brockhouse was negligent in preparing Dr. Busch's 1978 return. First, the provisions that was misapplied or not discovered[2] was not so complex, uncommon or highly technical that a preparer might reasonably be unaware or mistaken as to its applicability. Second, the understatement was not an isolated error but occurred in two instances. Third, the understatement was certainly material, as it resulted in underpayment of taxes in 1978 in the amount of $10,538.76.[3]

For the reasons stated above, the motion for summary judgment of the United States is granted, and the motion for summary judgment of Brockhouse is denied. Plaintiff failed to exercise due diligence in preparing the 1978 return of Dr. and Mrs. Robert Busch, and has failed to meet the burden imposed on him by section 1.6694–1(a)(5), 26 C.F.R. § 1.6694–1(a)(5). The complaint is hereby ordered dismissed.

---

**2.** Brockhouse's complaint concerning the failure of the United States to cite the provision of the Internal Revenue Code or judicial or administrative law which was negligently disregarded is without merit. At a minimum, Brockhouse disregarded 26 U.S.C. § 61, which provides that gross income includes income from interest.

**3.** As the preceding discussion indicates, the court has not relied on Brockhouse's statement at the February, 1981 meeting that "If anyone is negligent, I'm the one." This statement was offered in the context of a discussion regarding the possible liability of Dr. Busch under 26 U.S.C. § 6653, and not any potential liability of Brockhouse under section 6694(a). It would therefore seem to be more of an expression of Brockhouse's own sense of responsibility to his client than an admission of liability under section 6694(a).