**John BROCKHOUSE,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 83–2689.

United States Court of Appeals,
Seventh Circuit.

Argued May 25, 1984.

Decided Dec. 13, 1984.

William J. Campbell, Senior District Judge, sitting by designation, filed dissenting opinion.

Kimball R. Anderson, Winston & Strawn, Chicago, Ill., for plaintiff-appellant.

Patricia A. Willing, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

FLAUM, Circuit Judge.

This appeal raises the issue of whether the tax return preparer negligence penalty, section 6694(a) of the Internal Revenue Code,[1] can be assessed against a preparer who understates income tax liability because he relied solely on information supplied to him by the taxpayers. The Inter-

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Section 6694(a) provides:
   (a) Negligent or Intentional Disregard of Rules and Regulations.—If any part of any understatement of liability with respect to any return or claim for refund is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $100 with respect to such return or claim.

nal Revenue Service ("IRS") assessed a penalty against appellant John Brockhouse. Pursuant to section 6694(c), the appellant paid 15% of the penalty and sued for a refund.[2] The district court, 577 F.Supp. 55, denied the refund. For the reasons stated below, we affirm.

## I.

The appellant is a certified public accountant. In January 1979, he was hired by the CPA firm of Goldman, Weiss, Gelman & Sered ("Goldman, Weiss"). For several years Goldman, Weiss had prepared the income tax returns of Rubert-Busch, M.D., S.C., an Illinois professional corporation, and those of Dr. Robert Busch, the corporation's sole shareholder. The appellant's first contact with the tax affairs of Rubert-Busch and Dr. Busch was in March 1979.

The appellant prepared Rubert-Busch's corporate income tax return for its fiscal year ended February 28, 1979. He used a trial balance sheet prepared by the corporation's bookkeeper. The trial balance sheet showed loans to the corporation from Dr. Busch and from a bank. It also showed that the corporation had made payments for interest expense; however, it did not show whether any of the interest had been paid to Dr. Busch.

The appellant also prepared the 1978 income tax return for Dr. and Mrs. Busch. Goldman, Weiss had adopted a procedure of sending a data questionnaire to its individual income tax clients. The client was either to complete and return the question-

naire or to use it as a guide in collecting the information necessary to prepare the return. The Busches chose not to complete a questionnaire. Rather, the information was supplied by the corporation's business manager or bookkeeper. The information was then entered on input sheets of an outside computer service. The appellant reviewed the sheets and compared them with the information supplied and the information shown on the Busches' 1977 return. There were no items shown on the 1977 return that were not accounted for in the 1978 return. The appellant signed the 1978 return and sent it to the Busches for signature and filing. The appellant never inquired whether any of the interest expense shown on the corporate trial balance sheet had been paid to the Busches.

In May 1980, an IRS agent began an examination of the corporate return. The agent requested an analysis of the corporation's interest expense account. The appellant went to the corporation's offices and examined the general ledger and disbursements journal. From this, he learned that the corporation had paid interest to Dr. Busch. The appellant promptly brought the omission to the attention of the IRS agent.

The corporation had paid Dr. Busch interest income in the amount of $15,291.20. The Busches had not reported the income on their 1978 return. This resulted in an underpayment of federal income taxes in the amount of $10,538.76.

---

**2.** Section 6694(c) provides in pertinent part:

   (c) Extension of Period of Collection Where Preparer Pays 15 Percent of Penalty.—

      (1) In general.—If, within 30 days after the day on which notice and demand of any penalty under subsection (a) or (b) is made against any person who is an income tax return preparer, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2)....

      (2) Preparer must bring suit in district court to determine his liability for penalty.— If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under subsection (a) or (b) is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the income tax return preparer fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

The IRS assessed a $100 tax preparer penalty against the appellant. Pursuant to section 6694(c), the appellant paid $15 and filed a claim for refund. The refund was disallowed, and he filed suit in district court.

The district court denied the refund. It found that the appellant was negligent in omitting interest income from the return. The court found that he knew that the corporation had borrowed money from Dr. Busch and also that it had made interest payments. The court held that under these circumstances, a reasonable, prudent person would have made inquiries to determine whether any interest was paid to Dr. Busch. The court held that appellant was negligent in failing to obtain a completed data questionnaire from the Busches. Finally, the court relied on the factors listed in Revenue Procedure 80-40, which deals with liability under section 6694(a), to hold that the appellant had negligently disregarded a tax rule or regulation and thus was liable.

On appeal, the appellant argues that section 6694(a) does not apply to a tax return preparer's negligence in gathering facts from the taxpayer. He contends that section 6694(a) only applies where a preparer negligently misapplies a rule or regulation to a known item, and that where the preparer does not know of an item, he is not required to make inquiries or verify data. The appellant maintains that even if section 6694(a) does apply to a negligent failure to gather facts, his actions in this case were not negligent.

## II.

■ Section 6694(a) allows a penalty of $100 to be assessed against an income tax return preparer whose negligent disregard of rules or regulations results in an understatement of tax liability.[3] The preparer has the burden of proving the absence of negligence. Treas.Reg. § 1.6694-1(a)(5).

■ Section 6694 was one of several provisions added by the Tax Reform Act of 1976 to regulate income tax return preparers. Congress generally was concerned with deterring abusive practices by preparers. Prior to 1976, preparers were subject only to criminal penalties for willfully aiding or assisting in the preparation of a fraudulent return. Congress found that these criminal penalties were inadequate. *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 273–76, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897 at 3169–71. Although Congress was concerned with abuses by "commercial" preparers—those who are not accountants or lawyers—it determined that regulation of all preparers was appropriate. *Id.* at 274–75, 1976 U.S.Code Cong. & Ad.News at 3169–70. Section 6694 was added primarily to deter preparers from engaging in negligent or fraudulent practices designed to understate tax liability. *Id.* at 278, 1976 U.S.Code Cong. & Ad.News at 3174. However, Congress did not limit the applicability of section 6694(a) to situations involving disregard of rules or regulations applicable to the facts as provided by the taxpayer. Rather, section 6694(a) applies generally to "negligent disregard." We therefore hold that a tax preparer negligently disregards a rule or regulation under section 6694(a) if his or her negligent failure to inquire into information provided by the taxpayer results in the filing of a return that violates a rule or regulation.

■ To determine whether a tax preparer's actions constitute negligence under section 6694(a), we must first determine the applicable standard of care. Negligence in this context is defined generally as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Marcello v. Commissioner*, 380 F.2d 499, 506 (5th Cir.1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968); *see also Zmuda v. Commissioner*, 731 F.2d

---

**3.** Section 6694(a) also applies to intentional disregard of rules or regulations. There is no claim that the appellant's actions were intentional, and thus we limit our discussion to negligent disregard.

1417, 1422 (9th Cir.1984).[4] The regulation under section 6694(b), relating to willful disregard of rules or regulations, expressly provides that a preparer may not rely without verification on information supplied by the taxpayer if that information appears incomplete or incorrect. Treas.Reg. § 1.6694–1(b)(2)(ii). The regulation under section 6694(a) does not contain such an express provision, but it does provide that a preparer is not negligent if he or she "exercises due diligence in an effort to apply the rules and regulations to the information given" to him or her. Treas.Reg. § 1.6694–1(a)(1). This due diligence requirement means that a preparer must act as a reasonable, prudent person with respect to the information supplied to the preparer. We hold that if the information supplied would lead a reasonable, prudent preparer to seek additional information, it is negligent not to do so. A reasonable, prudent preparer would inquire as to additional information where it is apparent that the information supplied was incorrect or incomplete and it is simple to collect the necessary additional information.

We find this standard of care to be consistent with the congressional purpose behind section 6694(a). Congress passed section 6694 as part of an attempt to curb abusive practices by preparers. For a preparer to ignore the implications of information furnished where the error is apparent and simple to correct would be an abusive practice. We note that the IRS has interpreted section 6694(a) to apply to situations where the preparer has reason to know that the information supplied is incomplete or incorrect. *See* Rev.Rul. 80–265, 1980–2

C.B. 378 (under section 6694(a), although the preparer is not required to audit information, "the preparer may not ignore the implications of information furnished to the preparer") (citing guidelines set forth in Rev.Proc. 80–40, 1980–2 C.B. 774–75).

Applying the standard of care outlined above to the facts in this case, we agree with the district court that the appellant was negligent in failing to inquire whether any of the interest paid by the corporation had been paid to Dr. Busch. The error involved was relatively apparent. The appellant was aware that Dr. Busch had made loans to the corporation and that the corporation had made interest payments.[5] This should have alerted him to the possibility that interest had been paid to Dr. Busch. The appellant also was aware that the Busches did not report any interest paid on the loans made to the corporation. This should have alerted him to the possibility that the information supplied to him was not complete. The fact that a loan from a shareholder to a corporation could bear interest and that such interest would be income to the shareholder is not uncommon. Moreover, the appellant could have discovered the error merely by asking the corporation or the Busches whether any of the interest paid by the corporation had been paid to the Busches or by requesting and examining the corporate ledger. A prudent preparer would have inquired about interest payments on the loans rather than ignoring the implications of the information furnished.[6] Appellant's negligent failure to inquire led him to disregard the applicability of section 61,

---

**4.** These cases were decided under § 6653(a), relating to disregard of rules or regulations by taxpayers on their own returns. Congress has indicated that § 6694(a) is to be interpreted in a manner similar to § 6653(a). *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 278, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 3174.

**5.** The appellant contends that there is no proof that he received the corporate trial balance sheet before he prepared the individual return. We do not regard the order in which he prepared the returns as significant. Even if he prepared the individual return first, the corporate trial

balance sheet should have alerted him to the possibility of interest payments to Dr. Busch. At that time, he should have made the appropriate inquiries, recognizing that an amended individual return might be necessary.

**6.** We do not regard the appellant's failure to obtain a completed data questionnaire from the Busches as significant in determining whether he was negligent. The parties stipulated that a client did not have to fill out the questionnaire but rather could use it as a guide. Stipulation of Facts ¶ 10.

which provides that gross income includes interest income.[7] Thus, appellant is liable under section 6694(a).

Affirmed.

WILLIAM J. CAMPBELL, Senior District Judge, dissenting.

I regret that I cannot agree with the majority either in its construction of the statute or in its application to this case. The majority utilizes a general negligence analysis which is not justified by the language of the statute or the legislative history. In doing so it has given a broad interpretation to the statute in contravention of the principle that penal statutes are to be strictly construed. Furthermore, the majority has failed to present all the material facts and thus does not properly analyze the appellant's conduct. While the penalty assessed is quite modest, the sanction is important to the professional standing of the appellant. Moreover, this is the first published case involving this aspect of 26 U.S.C. § 6694(a). For these reasons, it is important that this case receive careful consideration.

The facts were presented to the district court in the form of a lengthy written stipulation. As noted by the majority, it is undisputed that the trial balance sheet indicated loans to the corporation from Dr. Busch and included entries for interest expense.[1] However, the balance sheet also noted that Rubert-Busch, M.D., S.C. borrowed money from the Michigan Avenue National Bank. The data submitted to Brockhouse did not indicate to whom the interest was paid as that information was irrelevant to the preparation of the corporate tax returns. Furthermore, the Busches' 1977 income tax return, which the appellant compared with the data for the 1978 return, accurately reflected no income from interest on loans to the corporation. These facts are crucial to an evaluation of appellant's conduct because they indicate that the information presented to him did not create the implication that Dr. Busch received interest income from the corporation in 1978. It is a common business practice for sole shareholders to make interest-free loans to their corporations. Such transactions can be compared to taking money out of one pocket and putting it in the other pocket. The data presented to Brockhouse was entirely consistent with this scenario. Therefore, I believe it is overstating the case to say that appellant ignored the implications of the information provided to him.

The majority notes that the appellant prepared the income tax return of Dr. and Mrs. Busch without requiring them to comply with the Goldman, Weiss data questionnaire procedure.[2] The district judge relied heavily on this fact as evidence of Brockhouse's lack of due diligence. However, the information was given to the appellant by Robert Eubank, the corporation's business manager and Dr. Busch's personal financial consultant. The data was prepared by the corporation's part-time bookkeeper who had a degree in law and business and was employed on a full-time basis by a national firm of certified public accountants. The fact that Brockhouse did not require compliance with the questionnaire procedure is not compelling, or even persuasive, evidence of negligence where the information was gathered by experienced specialists and not laypersons.

7. The appellant argues that § 7216, providing sanctions for unauthorized disclosure of information by tax return preparers, prohibited him from using information obtained from the corporate trial balance sheet in attempting to prepare the individual return. However, it appears that the regulations permit such disclosure. Treas.Reg. § 301.7216–2.

1. The stipulation of the parties reads:
   This trial balance sheet contained an item showing loans made by the Corporation to its sole shareholder. Stip. ¶ 14.

This is apparently an error as it is undisputed that Dr. Busch made the loans to the corporation.

2. The majority indicates in footnote 6 that it did not consider this fact to be significant in evaluating Brockhouse's conduct. I agree with them on that point and I discuss the issue only because the district court found that evidence to be persuasive.

Turning to the statute in issue, the majority utilizes a general negligence analysis in determining the applicability of the penalty. They state:

> Congress did not limit the applicability of section 6694 to situations involving disregard of rules or regulations applicable to the facts as provided by the taxpayer. Rather, it applies generally to "negligent disregard." p. 1251

I do not understand what "negligent disregard" in the abstract is, but I do know that such a selective editing of the statute is not supported by the legislative history. The majority relies on *Marcello v. Commissioner*, 380 F.2d 499 (5th Cir.1967), *cert. den.*, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968), a case applying 26 U.S.C. § 6653(a), as authority for the application of a general negligence standard. The justification for such reliance is provided in a footnote:

> Congress has indicated that § 6694(a) is to be interpreted in a manner similar to § 6653(a). *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 278, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 3174. fn. 4

This statement is an oversimplification. The penalty provision in § 6653 applies to taxpayers for under-payments "due to *negligence* or intentional disregard of rules or regulations" [Emphasis supplied]. The penalty provision in § 6694 applies to "*negligent* or intentional disregard of rules or regulations" [Emphasis supplied]. Thus, under § 6653 two discrete standards of conduct are involved: general negligence and intentional disregard of rules or regulations, *see discussion Marcello, supra,* 380 F.2d at 505–507. However, under § 6694 there must be a disregard of rules or regulations (either negligent or intentional) in order to impose the penalty.

Whenever § 6653 is referred to in the legislative history of § 6694 its relevance is limited to the "disregard of rules or regulations" provision:

> The penalty applies generally to every negligent or intentional disregard of such regulations and rulings except that a good faith dispute by an income tax return preparer about an interpretation of a statute (expressed in regulations or rulings) is not considered a negligent or intentional disregard of rulings and regulations. The provision is thus to be interpreted in a manner similar to the interpretation given the provision under present law (sec. 6653(a)) relating to the disregard of rules and regulations by taxpayers on their own returns.

H.R.Rep. No. 94–658, 94th Cong. 2d Sess. 278, reprinted in 1976 U.S.Code & Admin. News at 3174; *see also,* S.Rep. No. 94–938, 94th Cong. 2d Sess. 355, reprinted in 1976 U.S.Code & Admin.News at 3784; H.R. Rep. No. 95–1800, 95th Cong.2d Sess. 284, reprinted in 1978 U.S.Code & Admin.News at 7279.[3] The legislative history further indicates that Congress did not intend that all negligence would be subject to penalties under § 6694(a):

> [T]he bill establishes new penalties for certain negligent or willful attempts to understate a taxpayer's tax liability. H.R.Rep. No. 94–658, *supra* p. 278; *see also,* S.Rep. No. 94–938, *supra* p. 355.

Such a construction does not contravene the legislative purpose of the penalty:

> These penalties are primarily aimed at deterring income tax return preparers who prepare a large number of returns from engaging in negligent or fraudulent practices designed to understate a taxpayer's liability.

H.R.Rep. No. 94–658, *supra* p. 278; *see also,* S.Rep. No. 94–938, *supra* p. 355; *see,*

---

**3.** In the Revenue Act of 1978 certain technical corrections were made with respect to the Tax Reform Act of 1976. The Conference Report to that portion of the legislation addressed § 6694 and reiterated the discussion quoted above, concluding with this statement:

> The conferees further direct that the Internal Revenue Service shall reasonably interpret

section 6694(a) according to the standards of section 6653(a) and in light of all the facts and circumstances of each case, taking into account any and all mitigating factors.

Out of context it might appear to direct that the two statutes be applied identically. However, in the context of the report it does not.

*e.g., United States v. Ernst & Whinney,* 735 F.2d 1296 (11th Cir.1984).

In summary, the language of the statute does not provide that the penalty applies to all acts of negligence by an income tax preparer. While clearly § 6694(a) is modelled after § 6653(a) there is a significant difference in the terms of the statutes and we must assume that that distinction was intended by Congress. This conclusion is buttressed by a review of the legislative history. There is an additional consideration which reinforces, and to my mind solidifies, this analysis: *odioso restinjenda sunt* (translation: things odious must be strictly construed). This ancient principle of common law is so venerated that it is even applied to the tax gatherer:

> We are here concerned with a taxing Act which imposes a penalty. The law is settled that "penal statutes are to be construed strictly," *Federal Communications Commission v. American Broadcasting Co.,* 347 U.S. 284, 296, 74 S.Ct. 593, 601, 98 L.Ed. 699, and that one "is not to be subjected to a penalty unless the words of the statute plainly impose it," [Footnote and Citations omitted]. *Commissioner v. Acker,* 361 U.S. 87, 91, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959).

Thus, we are strictly limited to determining whether Brockhouse "disregarded a rule or regulation" either negligently or intentionally. The standard provided in the IRS's regulations is:

> A preparer is not considered to have negligently or intentionally disregarded a rule or regulation if the preparer exercises due diligence in an effort to apply the rules and regulations to the information given to the preparer to determine the taxpayer's correct liability for tax. 26 C.F.R. § 1.6694–1(a).

In this case, there is no question that Brockhouse properly applied the rules and regulations to the information he received. The underpayment of tax occurred because he was not informed that Dr. Busch received interest on his loans to the corporation. The issue then becomes whether he was justified in relying on the information provided. Rev.Proc. 80–40 provides:

> .03 The penalty under section 6694(a) of the Code generally will not apply where a preparer in good faith relies without verification upon information furnished by the taxpayer. Thus, the preparer is not required to audit, examine or review books and records, business operations, or documents or other evidence in order to verify independently the taxpayer's information.

This language further exculpates the appellant. There is a caveat, however:

> [T]he preparer may not ignore the implications of information furnished to the preparer or which was actually known by the preparer. The preparer shall make reasonable inquiries if the information as furnished appears to be incorrect or incomplete. Rev.Proc. 80–40.

I have no quarrel with this standard of conduct, but I do not think the appellant violated it in this case. It is undisputed that Brockhouse did not have any personal knowledge of the financial operations of Rubert-Busch, M.D., S.C. Furthermore, I do not believe we can find that the information provided to him appeared incorrect or incomplete. The corporation's trial balance sheet, the Busches' income data, and their 1977 income tax return are all consistent with a situation in which a sole shareholder made interest-free loans to his corporation. There was no data presented to Brockhouse which contradicted that common scenario. Thus, I do not believe that we can find that the appellant ignored the implication of the information provided to him.[4]

---

4. Revenue Ruling 80–265 presents two factual situations similar to ours with slight, but significant, differences. In Situation 1, the income tax preparer had no knowledge of any loans by the sole shareholder to the corporation, although he did deduct an interest expense on the corporate return. Subsequently, it was determined by the IRS that the shareholder had loaned money to the corporation and received interest income on it. The Revenue Ruling concludes that the penalty provision of § 6694(a) does not apply to the income tax preparer in that situation. In Situation 2 the information relating to the corporation indicated that the shareholder had received

In conclusion, I believe there is no basis for finding that Brockhouse disregarded any rule or regulation of the IRS. That is the conduct described in the statute and that is the conduct that Congress intended to penalize. If Congress had intended to sanction all negligence by income tax preparers, it would have said so. But it did not and we should not redraft the legislation. We are duty bound to apply the plain language of the statute and to construe it narrowly. Under those guidelines I believe it is clear that the imposition of the penalty in this case is in error and the District Court should be reversed.

Fagg, Circuit Judge, filed concurring statement.

interest on loans to the corporation. However, the data provided the income tax preparer with respect to the shareholder's individual return did not reflect the interest income. The failure to report that item of income on the shareholder's tax return was determined to justify imposition of the penalty under § 6694(a). The reasoning was that in Situation 2 the income tax preparer had reason to believe that the information provided to him was incomplete, while in Situation 1 he did not. Our case falls in between those two situations and, utilizing the same analysis, the penalty should not apply.