Randall S. **GOULDING**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 83 C 5692.**

United States District Court,
N.D. Illinois, E.D.

April 17, 1989.

Randall S. Goulding, Goulding & Goulding, Chicago, Ill., pro se.

George N. Leighton, Chicago, Ill., for plaintiff.

Thomas R. Jones, Gerard A. Brost, U.S. Dept. of Justice, Tax Div., Washington, D.C., for U.S.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONLON, District Judge.

After hearing the testimony of the witnesses, reviewing the exhibits offered by both parties, and considering the argu-ments of counsel, the court enters the following findings of fact and conclusions of law, in compliance with Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Plaintiff Randall S. Goulding ("Goulding") is a United States citizen. Stipulation ¶ 42.

2. In 1971, Goulding graduated from the University of Illinois with a degree in accounting and finance. *Id.* at ¶ 1. He then joined the Chicago office of the Internal Revenue Service ("IRS") as a special agent. *Id.* at ¶ 3. Goulding remained at the IRS from 1971 through 1978. During this time he became a certified public accountant and obtained a law degree from DePaul University School of Law. *Id.* at ¶¶ 4, 5. Goulding resigned from the IRS in 1978 to practice law. *Id.* at ¶ 6.

3. In 1979, Goulding and several other individuals formed three research and development limited partnerships: Mercon, Ltd. ("Mercon"), LaSala, Ltd. ("LaSala") and Jonquil, Ltd. ("Jonquil") (collectively, "the partnerships"). *Id.* at ¶¶ 7, 17.

4. Each partnership consisted of a general partner and a group of investors known as limited partners. *Id.* at ¶¶ 13, 14. The general partner in each instance was a corporation formed by Alex Pinsky ("Pinsky") and Zalmon Horn ("Horn"). *Id.* at ¶ 13. The limited partners were individual investors. *Id.* at ¶ 7.

5. The funds provided by the limited partners were used to acquire and to develop newly patented technologies. *Id.* at ¶ 25. The partnerships planned to profit by licensing their technologies to other investors. *Id.* at ¶¶ 8, 25.

6. Goulding played an active role in the partnerships' affairs. He was legal counsel to the partnerships both prior to and during their operation. *Id.* at ¶ 16. He also invested the partnerships' capital. *Id.* at ¶¶ 18, 20. Together with Pinsky, Horn and two other individuals, Norton Gold and

Morris Ziegler (collectively, "the sponsors"), Goulding decided which patents to acquire. *Id.* Then he negotiated the purchase price and the terms of the purchase agreements. *Id.* Once the patents were acquired, Goulding and the other sponsors determined the amounts spent on research and development. *Id.* at ¶ 19.

7. In addition to his role as legal counsel and investment advisor, Goulding prepared the partnerships' federal income tax returns. *Id.* at ¶¶ 28, 29; Government Ex. H–M.

8. A partnership tax return is a document known as "Form 1065." *Id.* This form reports partnership gains or losses in a given taxable year. *Id.* Form 1065 contains two additional documents that detail the partnership's financial activity: a "Schedule K" that computes the partnership's profit or loss, and a "Schedule K–1" that allocates the partnership's profit or loss among the limited partners in proportion to their original investment.[1] *Id.* There is a Schedule K–1 for each limited partner. *Id.*

9. From 1979 through 1981, Goulding completed a Form 1065 for each partnership. Sitpulation ¶ 35; Government Ex. H–M. On each return, Goulding signed his name in a space indicating that he was the partnership's "paid preparer." *Id.*

10. The partnerships made substantial investment expenditures in these years without receiving any income and incurred aggregate losses of $13,357,134.[2] Government Facts ¶ 13. The losses claimed by each partnership for the years 1979 through 1981 are as follows:

| Partnership | Tax Year | | |
|---|---|---|---|
| | 1979 | 1980 | 1981 |
| Mercon | $1,631,040 | $1,413,358 | $1,409,754 |
| LaSala | 2,011,469 | 1,771,298 | 1,769,978 |
| Jonquil | 1,214,449 | 1,071,066 | 1,064,722 |
| Totals: | $4,856,958 | $4,255,722 | $4,244,454 |

Government Ex. H–M.

11. Goulding computed these losses and allocated them among approximately 260 limited partners. Government Facts ¶ 13; Stipulation ¶ 35; Government Ex. H–M.

12. In each year that Goulding prepared a Form 1065, he received compensation from the partnerships. Stipulation ¶ 19. From 1979 through 1981, Goulding earned $250,000. *Id.* These earnings came from the partnerships' capital, that is, from funds originally supplied by the limited partners. *Id.*

13. Once Goulding completed a partnership return, he delivered the Schedule K–1's to the general partner. *Id.* at ¶ 31.

14. The general partner disseminated these schedules to the limited partners. *Id.*

15. The limited partners claimed the Schedule K–1 losses computed by Goulding as tax deductions on their individual returns. *Id.* at ¶ 40.

16. Aside from preparing the Schedule K–1's, Goulding had no contact with the limited partners. *Id.* at ¶ 39. He gave them no advice regarding the use of their losses, and had nothing to do with the preparation of any limited partner's individual return. *Id.* at ¶¶ 37, 38.

17. The IRS disallowed the loss deductions claimed by the limited partners for the tax years 1979 through 1981.[3] *Id.* at ¶ 32.

---

1. Because a partnership is not a taxable entity for federal income tax purposes, these profits and losses flow through to the limited partners where they are recognized for tax purposes on an individual basis. 26 U.S.C. § 6221; Government Ex. Q, R, S, Tax opinion ¶ 3.

2. These losses are attributable to expenditures initially contemplated by the partnership agreements. Government Ex. Q, R. S, Tax opinion ¶¶ 7, 8, 10, 11. These expenditures included management, legal and accounting fees, the cost of acquiring the patents and research and development expenses. *Id.* Because the partnerships adopted the accrual method of accounting, these expenditures were recognized as soon as the obligation to pay arose, and without regard to whether the partnerships actually paid out any cash. Government Ex. Q, R, S, Tax opinion ¶ 2. The accrual method does not recognize income until the right to receive the income actually arises. *Id.* From 1979 through 1981, the partnerships recognized no income because the newly patented technologies had not been developed into marketable products. Accordingly, the partnerships' business expenditures created losses.

3. Limited partners are entitled to deduct a proportionate share of the partnership's net losses to the extent of the adjusted tax basis of the individual's partnership interest, and to the extent such losses are not disallowed by application of the "at risk" rules in 26 U.S.C. §§ 465

18. The IRS assessed an income tax return preparer penalty against Goulding under 26 U.S.C. § 6694(a) for the losses claimed by the limited partners.[4] *Id.* at ¶ 33.

19. Pursuant to 26 U.S.C. § 6694(c), Goulding paid the IRS 15 percent of each assessment, and then commenced this action for a refund. Goulding Facts ¶ 10.

20. The issue of whether Goulding is a preparer under Section 6694(a) was tried before this court without a jury on December 22, 1988.

21. By agreement of the parties, only seven limited partner tax returns were offered into evidence. For each of these limited partners, Goulding prepared a Schedule K-1 reflecting a deductible loss of more than $2,000 and constituting an amount greater than 20 percent of the limited partner's adjusted gross income. Government Facts ¶ M; Government Ex. A–G.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over this action. 28 U.S.C. § 1346(a)(1).

2. This is a case of first impression. The issue raised is whether Goulding, by preparing a Schedule K-1 for each limited partner, "prepared" the limited partners' individual income tax returns within the meaning of Section 6694(a).[5]

3. Section 6694(a) penalizes the income tax return preparer whose negligent or intentional disregard of rules or regulations results in an understatement of liability.[6] *Brockhouse v. United States*, 749 F.2d 1248, 1251 (7th Cir.1984). The purpose of Section 6694(a) is to deter preparers from engaging in abusive practices that reduce taxable income. *Id.* Because Section 6694(a) imposes a penalty, its terms must be construed strictly. *Commissioner v. Acker*, 361 U.S. 87, 91, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959); *F.C.C. v. American Broadcasting Co.*, 347 U.S. 284, 296, 74 S.Ct. 593, 600, 98 L.Ed. 699 (1954); *Brockhouse*, 749 F.2d at 1255.

4. Goulding bears the burden of production and of persuasion as to whether preparation of the limited partners' Schedule K-1's renders him a "preparer" under Section 6694(a). *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Ruth v. United States*, 823 F.2d 1091, 1093 (7th Cir.1987).

and 704(d). Government Ex. Q, R, S, Tax opinion ¶¶ 4, 5. These sections limit the amount of a taxpayer's total deductions from certain activities to the amount of the taxpayer's actual economic investment in the activity. *Id.* Section 704(d) provides that the adjusted basis of an individual's limited partnership interest does not include any portion of partnership debt for which the limited partner is not personally liable ("non-recourse"). 26 U.S.C. § 704(d). The partnerships in this case assumed several liabilities that were non-recourse to the limited partners. Government Ex. Q, R, S, Tax opinion ¶ 5.

**4.** Goulding's assessed liability under Section 6694(a) amounted to $44,600. Amended Complaint ¶ 2, Counts I–VII.

**5.** Section 6723 of the Internal Revenue Code, 26 U.S.C. § 6723, does not foreclose the government from proceeding against Goulding under Section 6694(a). Section 6723(a)(1), (2) imposes a penalty on persons filing information returns that contain incorrect information or lack required information. The Schedule K-1's prepared by Goulding are information returns. 26 U.S.C. § 6031(b). Although Section 6723 was enacted in 1986, its penalty provisions do not

necessarily override Section 6694(a). The legislative history does not indicate that Congress intended Section 6723 to replace Section 6694(a). H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. 778 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 4075, 4866. Presumably, if Congress intended to replace Section 6694(a) with Section 6723, it would have made this intention known. Because Congress has wide latitude to determine whom to tax, and how to implement a tax, this court will not substitute its judgment for that of Congress and foreclose the government from proceeding under Section 6694(a). *Reed v. United States*, 743 F.2d 481, 485 n. 3 (7th Cir.1984), *cert. denied*, 471 U.S. 1135, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985); *Danly Machine Corp. v. United States*, 492 F.2d 30, 33 (7th Cir.1974).

**6.** Section 6694(a) provides:

If any part of any understatement of liability with respect to any return or claim for refund is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $100 with respect to such return or claim.

5.   The definition of "income tax preparer" is contained in 26 U.S.C. § 7701(a)(36).[7] This section defines a preparer as a person who is paid to prepare another individual's income tax return, or at least a substantial portion of the return.   26 U.S.C. § 7701(a)(36); *United States v. Ernst & Whinney,* 735 F.2d 1296, 1299 n. 3 (11th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 814 (1985).

6.   The Treasury Regulations provide that the sole preparer of a partnership tax return can also be a preparer of the limited partners' returns:

> [T]he sole preparer of a partnership return of income or a small business corporation income tax return is considered a preparer of a partner's or a shareholder's return if the entry or the entries on the partnership or small business corporation return reportable on the partner's or shareholder's return constitute a substantial portion of the partner's or shareholder's return.

26 C.F.R. § 301.7701–15(b)(3).  This regulation applies to situations where entries on limited partners' tax returns are derived from work produced by the preparer of the partnership return.   The partnership entry that is reproduced on the limited partner's return must constitute a substantial portion of the return.[8]

7.   The definition of "substantial portion" is supplied by Section 301.7701–15(b)(1)–(2) of the regulations.   These regulations provide a two-step process for determining a substantial portion of an individual's tax return.   *Mindell v. United States,* 693 F.Supp. 847, 849 (C.D.Cal.1988). Subsection (b)(2) of these regulations provides that when the amount involved in the entry is less than $2,000 and also is less than 20 percent of the partner's adjusted gross income, the entry is not a substantial portion of the return.[9]   If the entry meets this *de minimus* test, subsection (b)(1) requires the length, complexity and amount of the entry to be compared with the rest of the return.[10]   Therefore, whether an entry is a substantial portion of the return is a question of fact.   *Id.*

■   8.   The regulations at issue are presumptively valid.   *Zenith Radio Corp. v.*

---

7.   Section 7701(a)(36) provides in part:

The term "income tax return preparer" means any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by subtitle A or any claim for refund of tax imposed by subtitle A.   For purposes of the preceding sentence, the preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund.

8.   In Revenue Ruling 81–270, 81–2 C.B. 250, the IRS determined that a general partner who prepared both a partnership return and the limited partner's Schedule K–1, was the preparer of the limited partner's individual tax return.   In this ruling, the general partner was paid to prepare the partnership's Form 1065.   The limited partner claimed the loss deduction prepared by the general partner on the Schedule K–1 as a deduction on the partner's individual return.   The deduction was reproduced on a single entry, yet the IRS determined that the entry constituted a substantial portion of the limited partner's return.   Accordingly, the IRS ruled that the general partner was the preparer of the limited partner's return under Section 6694(a).

9.   26 C.F.R. § 301.7701–15(b)(1) provides:

(b) Substantial preparation.   (1) Only a person (or persons acting in concert) who prepares all or a substantial portion of a return or claim for refund shall be considered to be a preparer (or preparers) of the return or claim for refund.   A person who renders advice which is directly relevant to the determination of the existence, characterization, or amount of an entry will be regarded as having prepared that entry.   Whether a schedule, entry, or other portion of a return or claim for refund is a substantial portion is determined by comparing the length and complexity of, and the tax liability or refund involved in, that portion to the length and complexity of, and tax liability or refund involved in, the return or claim for refund as a whole.

10.   26 C.F.R. § 301.7701–15(b)(2) provides in part:

(2) For purposes of applying the rule of paragraph (b)(1) of this section, if the schedule, entry, or other portion of the return or claim for refund involves amounts of gross income, amounts of deductions, or amounts on the basis of which credits are determined which are—
   (i) Less than $2,000; or
   (ii) Less than $100,000, and also less than 20 percent of the gross income (or adjusted gross income if the taxpayer is an individual) as shown on the return or claim for refund, then the schedule or other portion is not considered to be a substantial portion.

*United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Howell v. United States,* 775 F.2d 887, 888 (7th Cir.1985); *Home Mutual Ins. Co. v. Commissioner,* 639 F.2d 333, 339–40 (7th Cir. 1980), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981). However, the court will not apply the regulations if they exceed the plain meaning of Section 7701(a)(36) and its legislative history.[11] *Acker,* 361 U.S. at 92, 80 S.Ct. at 147 (1951); *Fmali Herb, Inc. v. Heckler,* 715 F.2d 1385, 1387 (9th Cir.1983).

■ 9. The legislative history of Section 7701(a)(36) provides a concise, albeit unilluminating, definition of an income tax preparer:

> An income tax return preparer means any person who prepares, for compensation, all or a substantial portion of a tax return or claim for refund. Whether or not a portion of a return constitutes a substantial portion is to be determined by examining both the length and complexity of that particular portion of the return and the amount of tax liability involved.

H.R.Rep. No. 658, 94th Cong., 2d Sess. 275 (1976), *reprinted in* U.S.Code Cong. & Admin.News 2897, 3171. This language contemplates a *de minimus* test and tax return analysis similar to that contained in Section 301.7701–15(b)(1)–(2). Therefore, Section 301.7701–15(b)(1)–(2) is within the plain meaning of Section 7701(a)(36) and its legislative history. *Mindell,* 693 F.Supp. at 850–51.

10. The legislative history is not as clearly supportive of Section 301.7701–15(b)(3):

> In a normal case, the filling out of a single schedule of a tax return would not be considered a substantial portion of that return unless that particular sched-

ule was the dominant portion of the entire tax return.

H.R.Rep. No. 658, 94th Cong., 2d Sess. 275 (1976), *reprinted in* U.S.Code Cong. & Admin.News at 3171. This passage suggests that a single entry is not ordinarily a substantial portion of a tax return and implies that a preparer of a Schedule K–1 does not prepare a substantial portion of a limited partner's return. This interpretation is also supported by the following:

> A person who supplies to a taxpayer sufficient information and advice so that filling out the final tax return becomes merely a mechanical or clerical matter is to be considered an income tax return preparer.

*Id.* In one sense, this language implies that a tax return preparer must prepare most of the entries on the return. However, to derive a restrictive and narrow definition of "preparer" from this passage is inconsistent with Congress' desire to deter abusive tax practices. *Brockhouse,* 749 F.2d at 1251. As noted elsewhere in the legislative history, abusive practices are just as likely to occur on simple returns with relatively few entries as on complex returns with many entries:

> The fact that all types of preparers are about equally likely to make errors in preparing tax returns has led the GAO to recommend that any regulation of tax return preparers apply equally to all preparers.

H.R.Rep. No. 658, 94th Cong., 2d Sess. 275 (1976), *reprinted in* U.S.Code Cong. & Admin.News at 3171. This passage reflects Congress' intent to adopt an expansive definition of "income tax return preparer," not a restrictive one.

11. When read in conjunction with the remaining portion of the legislative history, Congress' expansive definition of "income

---

11. "Plain meaning" is a term of art. *Hiley v. United States,* 807 F.2d 623, 627 (7th Cir.1986). "The notion that because the words of a statute are plain, its meaning is also plain, is pernicious oversimplification." *Id.* citing *United States v. Monica,* 317 U.S. 424, 431, 63 S.Ct. 409, 412, 87 L.Ed. 376 (1943). The "plain meaning" of a statute becomes apparent only when the words of the statute are viewed in context. *First Chi-*

*cago Corp. v. Commissioner,* 842 F.2d 180, 183 (7th Cir.1988); *Hiley,* 807 F.2d at 627. Regulations fall within the "plain meaning" of a statute if, in the context of the legislative history, they are a reasonable interpretation of the statute. *Zenith Radio Corp.,* 437 U.S. at 450, 98 S.Ct. at 2445; *First Chicago Corp.,* 842 F.2d at 183; *Hiley,* 807 F.2d at 627.

tax return preparer" appears sufficiently flexible to include the preparer of a Schedule K-1:

> [A]n individual who gives advice on particular issues of law or IRS policy *relating to particular deductions or items of income* will not have prepared a return with respect to those issues if the advice does not directly relate to any *specific amounts which are to be placed on the return of the taxpayer.*

*Id.* at 275–76, 1976 U.S.Code Cong. & Admin.News at 3171 (emphasis added). This passage indicates that "income tax return preparer" includes individuals responsible for preparing one or two entries on a return. By implication, this includes the partnership preparer computing a Schedule K-1 for entry on a limited partner's return.

12. Conflicting passages in the legislative history provide no clear indication whether the preparer of a partnership return is the preparer of a substantial portion of a limited partner's return. Finding that the legislative history is ambiguous on this point, the court concludes that Section 301.-7201–15(b)(3) is within the plain meaning of Section 7701(a)(36) and its legislative history.

■ 13. Applying these regulations, the court finds that Goulding was the paid preparer of the limited partners' returns for purposes of Section 6694(a).

14. Goulding was paid by the limited partners to prepare their Schedule K-1's and to compute their loss deductions. Ostensibly, Goulding was compensated by the partnerships. However, to conclude on this basis that Goulding was not paid by the limited partners is to exalt form over substance. In tax analysis, the relevant inquiry is the substance of relationships, not their form. *Forseth v. Commissioner,* 845 F.2d 746, 749 (7th Cir.1988); *Saviano v. Commissioner,* 765 F.2d 643, 650 (7th Cir.1985); *Slappey Drive Industrial Park v. United States,* 561 F.2d 572, 583 (5th Cir.1977). Here, the partnerships were capitalized with funds provided entirely by the limited partners. The purpose of these partnerships was to create income and loss deductions for the limited partners. All

business decisions were made exclusively for their benefit. In substance, Goulding worked for the limited partners. In reality, he was paid by them with money they invested in the partnerships.

15. The limited partners' returns also meet the *de minimus* test of Section 301.-7701–15(b)(2). The entries in question are loss deductions claimed by the limited partners. Each deduction was derived from a Schedule K-1 prepared by Goulding. Stipulation ¶ 40. In each instance, the amount deducted is greater than $2,000 and also is greater than 20 percent of the individual's adjusted gross income. Government Ex. A–G.

16. The limited partners' returns contain several schedules and many entries. The entries containing Goulding's computations are a small portion of each return. However, the complexity and economic significance of these entries magnifies their importance. In most cases, the loss deductions computed by Goulding and claimed by the limited partners exceeded 50 percent of the total partnership losses. Government Ex. B, C, D, E, G. The losses computed by Goulding were the most significant losses on the returns. *Id.* Without them, the limited partners' tax liabilities were significantly greater.

17. The losses claimed by the limited partners were the result of considerable time, effort and planning by Goulding. Each business decision made by Goulding had tax consequences for the limited partners. Government Ex. Q, R, S, Tax opinion ¶¶ 7, 8, 10, 11. Goulding decided the amount to spend on acquiring the patents and on subsequent research and development. These decisions are reflected in the loss deductions claimed by the limited partners.

18. The legislative history of Section 7701(a)(36) supports a finding that Goulding prepared a substantial portion of the limited partners' returns for purposes of Section 6694(a). Congress enacted Sections 6694(a) and 7701(a)(36) to deter tax return preparers from understating taxable income. *Brockhouse,* 749 F.2d at 1251.

Congress recognized that in many instances:

> [T]he preparer either claimed fictitious deductions or increased the number of exemptions claimed in order to achieve the refund or tax liability which was promised to the taxpayer.

H.R.Rep. No. 658, 94th Cong., 2d Sess. 274 (1976), *reprinted in* U.S.Code Cong. & Admin.News at 3170. Congress enacted Sections 6694(a) and 7701(a)(36) to combat this practice:

> [W]here the IRS determines that a certain return preparer has made erroneous interpretations of the tax law, *regulation of all preparers* would allow the IRS *to correct these errors* on all returns prepared by that preparer.

*Id.* at 275, 1976 U.S.Code Cong. & Admin. News at 3171 (emphasis added). Clearly, Congress was concerned with whether specific deductions and exemptions were abusive, not whether these items constituted a plurality on the return. Sections 6694(a) and 7701(a)(36), as amplified by Sections 301.7701–15(b)(1)–(3) of the regulations, provide the IRS with the tools to correct these abuses at their source.

19. Goulding, being the source of the deductions claimed by the limited partners, is the preparer of their tax returns under Section 6694(a).