**Raymond C. WEIDMANN, Plaintiff,**

v.

**U.S. DEPARTMENT OF the TREASURY and Internal Revenue Service, Defendants.**

**Civ. Nos. 84–958L, 84–1245L.**

United States District Court, W.D. New York.

Feb. 3, 1989.

to compel Mr. Justice Lerner to perform in his capacity as an Administrative Judge.

Sherman Levey, Harris, Beach & Wilcox, Rochester, N.Y., for plaintiff.

Kenneth C. Brown, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

These are actions by Raymond C. Weidmann (Weidmann), an accountant, for a refund of a "preparer's penalty" assessed against him by the Internal Revenue Service (IRS) pursuant to § 6694(a) of the Internal Revenue Code (Code) for tax returns prepared during the years 1980–1982. There were nineteen separate returns, each of which resulted in penalties over the three-year period. The two actions, Civ. Nos. 84–958 and 84–1245, are hereby consolidated for trial to the court. The parties stipulated that since the pattern was the same, the court could determine the issues based on the testimony of seven taxpayer witnesses who testified. This decision constitutes my findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

## FACTS

The cases all involved the same issue, that is, whether Weidmann's advice and recommendation concerning two employee tax benefit plans allegedly in conformance with § 105 and § 119 of the Code constituted negligent or intentional disregard of the rules and regulations promulgated by the IRS. Section 6694(a) provides that a tax preparer must pay a penalty of $100 per return if an understatement of taxes due is based on the "negligent or intentional disregard of [the IRS] rules and regulations." 26 U.S.C. § 6694(a) (1988).[1]

The court heard testimony from Weidmann and seven taxpayers, and the scheme was basically the same in each case. In virtually every case, one of the spouses, usually the wife, was self-employed in the home. Several of the wives were real estate sales persons; other jobs included a sales representative for a women's line of clothing, a florist, and a manufacturer's representative for cookware and silverware.

In each case, Weidmann had the taxpayers execute forms describing the other spouse, usually the husband, to be an employee of the self-employed person. Weidmann also had the taxpayer sign forms indicating that the husband "employee" was required to live on the "premises"—which was the marital residence—and take meals there. This was done to qualify under § 119.[2] The plan was that these lodging and food benefits under § 119 would not be taxable to the employee-spouse but could be deducted as expenses by the employer spouse. Of course, in

---

1. There is no dispute that plaintiff is an income tax return preparer as defined in 26 U.S.C. § 7701(a)(36).

2. Section 119 provides in pertinent part:

(a) Meals and lodging furnished to employee, his spouse, and his dependents, pursuant to employment.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

virtually all cases, a joint return was filed. In fact, in every case substantial deductions were claimed for virtually all of the food consumed by the family, all housing expenses and all medical expenses of the "employee-spouse".

Weidmann attempted to justify the medical expenses under § 105 which provides that an employer's reimbursement of medical expenses is not considered income to the employee taxpayer.[3]

In each case, the Internal Revenue Service disallowed the deductions resulting in substantial taxes due. In many cases, these taxes totaled in excess of $8,000.

In all cases, the so-called employee-spouse performed few services. It was similar to the kind of help that most spouses render to the other on a sporadic, casual basis. In no case, did the relationship change after the forms were signed by the taxpayers concerning the employer-employee relationship.

Weidmann testified that he has been a certified public accountant since 1964. He has been self-employed since 1965; prior to that he worked for approximately four years for two different accounting firms. He belongs to several state and national accounting associations. He estimated that during 1980, 1981 and 1982 he prepared approximately one hundred and fifty tax returns per year. During those years, he began to consider use of a § 119 plan for couples who qualified because one of them was self-employed and working in the home. He admitted that initially this was a "new thought" or "new road" so that he did not mention it to too many taxpayers. At first, he thought about thirty taxpayers might be covered. About half of those taxpayers agreed to the plan.

Weidmann claimed that with each couple he inquired as to whether there was a true employee-employer relationship and he claims he told each taxpayer that since

husband-wife, employer-emloyee relationships were always suspect they would have to document the relationship. He also had each couple sign statements concerning their relationship. He claimed that this was just to demonstrate to the taxpayers that this was a serious undertaking.

He described the business relationship underlying the § 119 plan for the federal income tax returns of ten separate couples at issue here. In virtually all cases, the "employee" spouse performed relatively minor services for the self-employed spouse. In virtually all cases the "employee" had another full-time job out of the home.

Weidmann claimed that he researched this issue in the Commercial Clearing House (CCH) and Prentice Hall tax services. He claimed that he found no authority that would not allow the plan although he admitted that he found no specific authority in support of it.

Weidmann admitted that he had taught courses in taxation and that he had prepared thousands of tax returns. He was aware of revenue rulings and "private letter rulings" from the IRS but he never sought any ruling from the IRS on this proposed scheme.

Weidmann conceded that all of the home maintenance, including heat, lighting, utilities, painting, garbage collection were deducted as well as all food items. The food items were listed on Schedule C of all tax returns under the category "supplies". Weidmann denied that he placed the food items there rather than create a separate line marked "food" in order to hide the deductions from IRS scrutiny.

Weidmann also claimed that the food and lodging were not considered "compensation" (because they would be taxable then) but were merely for the "convenience" of the employer-taxpayer.

---

**3.** Section 105 provides in pertinent part:
  (a) Amounts attributable to employer contributions.
  Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

On cross-examination, Weidmann was shown several tax returns which showed a minimal "salary" paid to the spouse (often less than $250) which resulted in tax deductions of $4,000 to $7,000. In one case, concerning the Jones taxpayers, the husband employee was paid $120 salary but deductions for medical expenses, food and utilities totaled almost $7,000.

In virtually all cases, the taxpayers were told of this plan by Weidmann and they simply followed his advice in order to save taxes. All the taxpayers conceded that their living situation remained precisely the same after these plans were set up as it had before. In no case did any employee-spouse have to move to a new residence to qualify for the § 119 plan. This procedure was new to all of the taxpayers who testified. None of them indicated that this plan had been used before or since their contact with Mr. Weidmann.

Two experts testified—one for each side—concerning the standard of competence exercised by Weidmann in preparing the returns and in rendering the advice that he did. The Government's expert was William L. Raby, whose experience and expertise in the field of accounting was notable. Raby has been in practice for over thirty-five years. He has been a certified public accountant (CPA) since 1950 and he received his Ph.D. degree in Business Administration in 1971. He has wide experience with three separate accounting firms. He was founder and managing partner of his own firm, William L. Raby & Company, Tucson, Arizona, for ten years. From 1970 to 1977, he was the national tax partner and member of the National Council of the Laventhol & Horwath Firm. He was also a partner with Touche Ross & Co. for ten years until he retired in 1987. He was National Director of Tax Services and tax function member of the firm's executive committee from 1977 until 1982; he was managing partner of the Phoenix office from 1981 until 1986 and was a senior partner of the firm from 1986 until 1987. Raby has also taught courses in taxation and controllership for over thirty years at the University of Arizona, Ohio University, New York University and Arizona State University. In addition, he has numerous other professional credentials and awards, too numerous to list, and has published numerous books and articles concerning taxation, tax practice management and tax accounting. He was Chairman of the American Institute of Certified Public Accountants (AICPA), Tax Division, from 1980 to 1983 and from 1983 to 1986 he was on the AICPA special committee on standards for professional conduct for CPA'S. He is a member of the Editorial Advisory Board, Taxation for Accountants; a member of the Advisory Board of Tax Analysts; a member of the United States Income Tax Advisory Board; and an advisory board member of accountants in the public interest.

Raby testified that he agreed to testify for the Government in this case because he believed that the facts were so "egregious" that they constituted an embarrassment to the profession. First of all, it was clear from Raby's testimony that he did not believe that there was a valid employer-employee relationship. If there were no such relationship, that would, of course, preclude any deductions. Even if there were a valid employee-employer relationship, he believed that Weidmann was at fault because the ordinary and necessary business expenses under § 162 must be reasonable in relation to the benefit achieved.[4] He testified that this clearly was not the case here. He believed the plan set up by Weidmann was essentially a "sham transaction" where there was no real change in relationship between the parties. There was no change of any kind between the parties which would warrant the tax changes that were proposed.

In Raby's view, Weidmann did not meet the standard of care required in the industry and did not exercise independence in determining whether there was reasonable support for the deductions that were claimed. In addition, he believed Weid-

4. Under section 162 "all the ordinary and necessary expenses paid or incurred during the tax-able year in carrying on any trade or business" are allowable deductions.

mann's clients were not properly advised that there was a virtual one hundred percent likelihood of disallowance of the deductions. In Raby's opinion, there was no reasonable support for these deductions and it constituted "frivolous" advice and in his view was an extreme example of negligent advice and preparation of tax returns.

Patrick F. Kreckel testified on behalf of plaintiff. He testified that he was a public accountant and was not a CPA. He admitted that he based his opinion that Weidmann's advice was "not negligence" on his assumption that there was a valid employer/employee relationship. Kreckel admitted that he might not have given the same tax advice and in fact he stated that he had serious doubts as to whether the claimed deductions would be accepted by the tax court but, nevertheless, he did not feel that the aggressive advice of Weidmann was so bad as to be unreasonable and subject to the preparer penalties of § 6694.

## DISCUSSION

■ Based on the testimony in this case, I conclude that plaintiff has failed to meet his burden of establishing that the IRS erred in imposing the tax preparer penalty under § 6694. Judgment should be entered in both cases for the defendant.

The standard for imposing the tax preparer penalty is clear. Although § 6694(a) does not itself define what constitutes negligent or intentional disregard of IRS rules and regulations, and has not been the subject of frequent judicial interpretation, it is clear that this provision is to be interpreted in a manner similar to the construction given § 6653(a) relating to negligent or intentional disregard of IRS rules and regulations by taxpayers.[5] *See* H.R.Rep. No. 94–658, 94th Cong., 2d Sess. 278, *reprinted in* [1976] U.S.Code Cong. & Ad.News 2897, 3174; *Swart v. United States,* 568 F.Supp. 763, 765 (C.D.Cal.1982), *aff'd,* 714 F.2d 154 (9th Cir.1983); 26 C.F.R. § 1.6694–1(a)(4). Courts construing § 6653(a) have defined

negligence to mean "lack of due care or failure to do what an ordinary reasonably prudent person would do under the circumstances." *Swart, supra,* 568 F.Supp. at 765. IRS regulations provide that "[a] preparer is not considered to have negligently or intentionally disregarded a rule or regulation if the preparer exercises due diligence in an effort to apply the rules and regulations to the information given to the preparer to determine the taxpayer's correct liability for tax." 26 C.F.R. § 1.6694–1(a)(1). The regulations further provide that if a tax preparer in "good faith" and with a "reasonable basis" disputes an IRS interpretation of a Code provision, the preparer is not deemed to have negligently or intentionally disregarded the rules or regulations. 26 C.F.R. § 1.6694–1(a)(4); *see also,* H.R.Rep. No. 94–658, [1976] U.S.Code Cong. & Ad.News at 3174.

■ As with § 6653(a), there is a presumption of validity regarding the IRS' imposition of a penalty under § 6694(a). In order to prevail, plaintiff here must demonstrate that the IRS erred in imposing these penalties, that is, he must prove that he exercised due care or acted as a reasonably prudent person would have under the circumstances. *Swart,* 568 F.Supp. at 765; *Brockhouse v. United States,* 577 F.Supp. 55, 57 (N.D.Ill.1983), *aff'd,* 749 F.2d 1248 (7th Cir.1984); 26 C.F.R. § 1.6694–1(a)(5).

On this record, plaintiff has clearly failed to meet his burden. The facts here establish that the imposition of the tax preparer penalty was not error. I find that Weidmann's plan was merely a scheme devised solely for the purpose of achieving tax benefits without regard to the validity of the exclusions from income or business deductions. I further find that Weidmann's actions in assessing the validity of his proposed plan falls far short of an exercise of due care. In light of Mr. Raby's testimony, which I credit, there is ample basis in

---

**5.** Section 6653(a) provides in pertinent part: "If any part of any underpayment ... is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of—(A) 5 percent of the underpayment, and (B) an amount equal to 50 percent of the interest payable ... with respect to the portion of such underpayment which is attributable to negligence...." 26 U.S.C. § 6653(a).

the record to find that Weidmann was negligent, at best, in the preparation of the tax returns in question.

Mr. Raby's expert testimony makes clear that Weidmann failed to exercise due diligence and that no reasonably prudent CPA would have found that the exclusions and deductions as applied to the taxpayers involved here were valid. While the actual validity of the exclusions and deductions is not at issue here, it is relevant to a determination of whether plaintiff exercised due care. It is clear that it was at least highly questionable whether the relationship between the married taxpayers was truly that of employer-employee since the employee-spouse did not provide substantial services for the employer-spouse's business. Based on Mr. Raby's testimony, I conclude that no reasonably prudent CPA would have believed that there was a legitimate, bona fide employer-employee relationship on which valid exclusions under §§ 105 and 119 and deductions under § 162 could be based. Moreover, with respect to the § 119 exclusions, the facts do not support plaintiff's contention that he could reasonably have thought that § 119's "convenience of the employer test" was met by the "reasonable necessity for the employee-spouse to be available and 'on call' in order to promote the business of the employer/spouse." Plaintiff's Trial Memorandum at 10. There was certainly no bona fide requirement that the employee reside at the place of employment and take all meals there.[6] If this were the case, virtually all taxpayers who occasionally "helped" their self-employed spouses would be able to claim these exclusions from income and deductions. A further indication of the unreasonableness of plaintiff's advice is the gross disproportionality of the large exclusions and deductions taken to the actual minimal income the employee-spouse earned for the "help" he or she provided.

The IRS has promulgated rules and regulations in interpreting the validity of exclusions from income under §§ 105 and 119. *See* 26 C.F.R. § 1.105–1 *et seq.*, and § 1.119–1 *et seq.* An objective review, and common sense reading, of these rules and regulations in light of the policy underlying the tax provisions compels the conclusion that Weidmann did not exercise due care or diligence in advising his clients that personal living and family expenses, which generally are non-deductible, 26 U.S.C. § 262, could be transformed into valid exclusions and business deductions merely because an individual helped out his or her self-employed spouse.

The conclusion that Weidmann did not act with due care is further supported by the fact that he never sought a ruling from the IRS or any independent advice from another accountant or tax lawyer regarding his proposed "imaginative application" of the tax laws prior to filing the returns. The mere fact that the IRS disallowed the exclusions and deductions is not dispositive of the issue of whether the § 6694(a) penalties were justified. There is nothing wrong with professional creativity and aggressiveness in interpreting and applying the tax laws. Weidmann's "imaginative" scheme, however, transgressed the bounds of a novel and creative, but good faith, construction of Code provisions. Based on Mr. Raby's testimony, it is difficult to believe that an experienced CPA could have had a good faith belief that such a scheme was arguably valid.

I, therefore, conclude that plaintiff has failed to sustain his burden of proof that imposition of the penalties was erroneous.

## CONCLUSION

For the reasons stated above, plaintiff's complaints in both actions, Civ. No. 84–958 and Civ. No. 84–1254, are dismissed, and

---

6. With respect to § 119, the regulations provide that the value of meals and lodging shall be excluded from the employee's gross income if certain tests are met. Meals are excludable if "(i) [t]he meals are furnished on the business premises of the employer, and (ii) the meals are furnished for the convenience of the employer."

26 C.F.R. § 1.119–1(a). The value of lodging is excludable if "(1) [t]he lodging is furnished on the business premises of the employer, (2) [t]he lodging is furnished for the convenience of the employer, and (3) [t]he employee is required to accept such lodging as a condition of his employment." 26 C.F.R. § 1.119–1(b).

judgment for defendant shall be entered in both cases.

IT IS SO ORDERED.