**Randall S. GOULDING,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

**No. 90–1788.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1991.

Decided March 18, 1992.

Randall S. Goulding (argued) and George N. Leighton, Neal & Associates, Chicago, Ill., for plaintiff-appellant.

Thomas P. Walsh, Ira H. Raphaelson, Asst. U.S. Attys., Office of the U.S. Atty., Crim. Div., Chicago, Ill., Gary R. Allen, James K. Wilkens, Robert S. Pomerance (argued), Teresa T. Milton, Dept. of Justice, Tax Div., Appellate Section, and Thomas R. Jones, Dept. of Justice, Tax Div., Appellate

Section, Washington, D.C., for defendant-appellee.

Before WOOD, Jr.,* FLAUM, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Randall Goulding was retained to act as the attorney for several limited partnerships. Mr. Goulding prepared the partnership returns and the Schedules K–1 for each partnership. Under Treasury Regulation § 301.7701–15(b)(3), the IRS deemed Mr. Goulding the preparer of the returns of the limited partners and assessed penalties against Mr. Goulding under 26 U.S.C. § 6694 for the negligent preparation of those returns. Mr. Goulding challenged the penalties in the district court, and the district court upheld them. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

Randall Goulding graduated from the University of Illinois in 1971 with a degree in accounting and finance. From 1971 until 1978, he worked for the IRS as a special agent. During this time he became a certified public accountant and studied law at DePaul University, receiving his degree in 1978. In 1979, Mr. Goulding took an active part in the formation and operation of three limited partnerships, Mercon, Ltd. (Mercon), LaSala, Ltd. (LaSala), and Jonquil, Ltd. (Jonquil). Mr. Goulding helped set up the partnerships, helped draft offering memoranda and reviewed final drafts, acted as legal counsel, helped decide how to invest the partnerships' capital, and negotiated and drafted purchase agreements and other agreements for the partnerships. He also prepared the partnerships' informational tax returns, which he signed as "paid preparer." For acting as legal counsel, Mr. Goulding received compensation from the partnerships—$90,000 in 1979, $80,000 in 1980, and $86,250 in 1981.

The three limited partnerships were similarly structured. Each partnership entered into "patent agreements" with inventors, under which it purchased the rights to technologies. Each partnership then entered into research and development agreements and exclusive license agreements with the National Patent Development Corporation (National Patent), providing for National Patent to develop and market the technologies. Mercon entered into purchase agreements with inventors for a total of $7,000,000, LaSala for $8,800,000, and Jonquil for $5,302,000. However, the partnerships actually paid the inventors only a small portion of these prices. Payment of the rest was contingent on sales revenues from the technologies reaching multimillion dollar levels. The limited partners personally guaranteed the partnerships' contingent debt to the inventors. The limited partners were liable on the debt only if the sales revenues reached the multimillion dollar levels specified in the patent agreements.

The development and marketing agreements provided that National Patent would make royalty payments to the partnerships of a certain percentage of revenue realized from the sale of patented technologies or technologies with patents pending. The district court found that there was no reliable evidence to show that any of the technologies had patents or patents pending. Thus, no royalty payments were likely anytime soon.

For the years 1979 through 1981, Mr. Goulding prepared each partnership's 1065 form, reporting gains and losses, the Schedule K for each partnership, computing the partnership profits and losses, and Schedules K–1, allocating to each limited partner his share of the partnership's profits and losses. The general partner provided each limited partner with a copy of the Schedule K–1, and the limited partners (or their tax return preparers) used the numbers on it in filling out their returns. Mr. Goulding had no contact with the limited

---

* Judge Wood assumed senior status on January 16, 1992, which was after oral argument in this case.

partners other than through his preparation of the partnership tax returns and the Schedules K–1. He gave them no advice regarding the use of the information on the Schedules K–1, and he did not prepare their individual returns.

In preparing the partnership tax returns, Mr. Goulding listed what the district court later found to be non-deductible start-up costs as expenses/losses and depreciated the entire purchase price of the technologies, including the contingent portion. In computing the basis of each limited partner in his partnership interest, Mr. Goulding used the debt guaranteed by each to increase his basis and thus increase the allowable deductions.

The IRS, asserting that Mr. Goulding was the preparer of the limited partners' returns, assessed penalties against him under section 6694(a), which penalizes tax preparers for understatements of tax on negligently prepared returns.[1] Mr. Goulding paid fifteen percent of the penalty and brought suit for refund in the district court under 26 U.S.C. § 6694(c). In a bifurcated proceeding, the district court first determined that the Treasury regulation under which Mr. Goulding was deemed preparer of the limited partners' returns was valid and that, under the terms of that regulation, Mr. Goulding could properly be considered the preparer of those returns.[2] In a second trial, the district court determined that Mr. Goulding's negligence had resulted in substantial understatements of tax liability on the returns of the limited partners and upheld the penalties assessed by the IRS.

## II

## ANALYSIS

Mr. Goulding challenges both the validity of the Regulation under which he was deemed the preparer of the partners' returns, and the district court's determination

that he was negligent in preparing those returns.

In challenging the validity of the Regulation, Mr. Goulding faces a difficult task. "Congress has delegated to the [Secretary of the Treasury and his delegate, the] Commissioner [of Internal Revenue], not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 U.S.C. § 7805(a)." *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). "That delegation helps ensure that in 'this area of limitless factual variations,' like cases will be treated alike." *Id.* (quoting *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967)). Therefore, Treasury Regulations are presumptively valid, *Acker v. C.I.R.,* 258 F.2d 568 (6th Cir.1958), *aff'd,* 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959), and the courts defer to them "so long as they are reasonable." *Cottage Sav. Ass'n v. C.I.R.,* —— U.S. ——, 111 S.Ct. 1503, 1508, 113 L.Ed.2d 589 (1991); *see also Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Howell v. United States,* 775 F.2d 887, 888 (7th Cir. 1985). "A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent." *National Muffler,* 440 U.S. at 477, 99 S.Ct. at 1307.

### A. *Statutory and Regulatory Scheme*

#### 1. Statute

Section 6694 of the Internal Revenue Code penalizes income tax return preparers for understatements of taxpayer's liability which result from negligent disregard of rules and regulations by the return preparer or from wilful attempts by the return

---

1. The penalties amounted in aggregate to $53,-300.

2. By agreement of the parties, the district court examined seven representative returns. Each return reflected the deductible loss entered on

the K–1 prepared by Goulding, and in each case the deduction was in an amount greater than $2,000 and greater than 20% of the limited partner's adjusted gross income.

preparer to understate the tax due.[3] Section 6694 was included in the Tax Reform Act of 1976 as part of a package of provisions designed to regulate income tax preparers and to deter improper conduct by them. *See Brockhouse v. United States*, 749 F.2d 1248, 1251 (7th Cir.1984). These provisions were enacted in response to abuses by tax return preparers. In addition to the section 6694 penalties, the provisions included penalties for failing to provide the taxpayer with a copy of the return, to sign the return as preparer, to furnish an identifying number, and to retain a copy or list of returns prepared. *See* 26 U.S.C. § 6695.

Before the 1976 Tax Reform Act, tax return forms required the preparer to sign the form, but there was no penalty for failing to do so. Tax return preparers were subject to criminal liability for willfully aiding or assisting in the preparation of false or fraudulent tax returns under section 7206. They were not subject to civil fraud penalties or negligence penalties of the sort individual taxpayers could incur. Thus, under the pre–1976 Code, it was difficult for the IRS to determine if a preparer or the taxpayer himself was responsible for a return. Moreover, if the IRS found an incorrect return prepared by a professional or commercial preparer, it was difficult to trace other returns prepared by the same preparer. Even if the IRS could trace the improper preparation of returns to an individual tax return preparer, the criminal penalties available under the pre–1976 Code were "often inappropriate, cumbersome, and ineffective deterrents because of the costs and length of time involved in trying these cases in court." H.R.Rep. No. 658, 94th Cong., 2d Sess. 274, *reprinted in* 1976 U.S.C.C.A.N. 2897, 3170.

The difficulties in regulating tax return preparers became acute with the "substantial increase in the number of persons whose business is to prepare income tax returns for individuals and families of average income." *Id.* at 3169. Nonetheless, the provisions were not aimed solely at commercial preparers preparing large numbers of relatively simple returns for average income taxpayers, but were intended also to apply to professional preparers— lawyers and accountants—preparing more complex returns. *Id.* at 3170–71.

Along with the penalty provisions, the 1976 Act provided a statutory definition of "income tax return preparer."[4] The definition was intended to limit application of the penalty provisions to professional and commercial preparers, and to exclude those preparing returns for employers, friends and relatives. Another purpose of the definition was to ensure that the person who

**3.** Section 6694 states in pertinent part:
(a) **negligent or intentional disregard of rules and regulations.**—If any part of any understatement of liability with respect to any return or claim for refund is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $100 with respect to such return or claim.
Section 6694(a) was amended in 1989 to apply to "understatements due to unrealistic positions." The amended version applies to documents prepared after December 31, 1989.

**4.** Section 7701(a)(36) defines income tax return preparer as
(A) **In general.**—The term "income tax return preparer" means any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by subtitle A or any claim for refund of tax imposed by subtitle A. For purposes of the preceding sentence, the preparation of a substantial portion of a return or claim for refund shall be treated as if it were

the preparation of such return or claim for refund.
(B) **Exceptions.**—A person shall not be an "income tax return preparer" merely because such person—
(i) furnishes typing, reproducing, or other mechanical assistance,
(ii) prepares a return or claim for refund of the employer (or of an officer or employee of the employer) by whom he is regularly and continuously employed,
(iii) prepares as a fiduciary a return or claim for refund for any person, or [pre–1978 prepares a return or claim for refund for any trust or estate with respect to which he is a fiduciary, or]
(iv) prepares a claim for refund for a taxpayer in response to any notice of deficiency issued to such taxpayer or in response to any waiver of restriction or another taxpayer if a determination in such audit of such other taxpayer directly or indirectly affects the tax liability of such taxpayer.

makes the decisions and calculations involved in preparing a particular return will be considered the preparer of that return, even if that person "does not actually place the figures on the lines of the taxpayer's final tax return." H.R.Rep. No. 658, 94th Cong., 2d Sess. 275, *reprinted in* 1976 U.S.C.C.A.N. 3171. Thus, furnishing of advice can make one a preparer, while mechanical assistance in preparing the return does not:

A person who supplies to a taxpayer sufficient information and advice so that filling out the final tax return becomes merely a mechanical or clerical matter is to be considered an income tax return preparer. However, an individual who gives advice on particular issues of law or IRS policy relating to particular deductions or items of income will not have prepared a return with respect to those issues if the advice does not directly relate to any specific amounts which are to be placed on the return of the taxpayer.

*Id.* Where more than one person makes substantive contributions to the return, the definition of preparer limits liability to those who prepare a "substantial portion" of the return.

2. Regulation

Pursuant to his statutory authority, *see* 26 U.S.C. § 7805, the Commissioner promulgated a regulation elucidating the definition of "income tax return preparer." This regulation, Treasury Regulation § 1.301.-7701–15, was adopted in 1977 and thus is a "substantially contemporaneous construction of the statute," which was passed in 1976. *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). Subparagraph (b)(3) of the regulation defines the circumstances in which the preparer of one return may be deemed the preparer of another which directly reflects an entry (or entries) of the return actually prepared:

A preparer of a return is not considered a preparer of another return merely because an entry or entries reported on the return may affect an entry reported on the other return, unless the entry or entries reported on the prepared return are directly reflected on the other return and constitute a substantial portion of the other return.

The subparagraph gives the example of the preparer of a partnership return:

For example, the sole preparer of a partnership return of income or a small business corporation income tax return is considered a preparer of a partner's or a shareholder's return if the entry or entries on the partnership or small business corporation return reportable on the partner's or shareholder's return constitutes a substantial portion of the partner's or shareholder's return.

Both the regulation quoted above and the statutory definition of preparer state that a person is not the preparer of a return unless one is responsible for a "substantial portion" of it. Treasury Regulation 301.-7701–15(b)(1) sets forth what constitutes substantial preparation:

(b) *Substantial preparation.*—(1) Only a person (or persons acting in concert) who prepares all or a substantial portion of a return or claim for refund shall be considered to be a preparer (or preparers) of the return or claim for refund. A person who renders advice which is directly relevant to the determination of the existence, characterization, or amount of an entry on a return or claim for refund, will be regarded as having prepared that entry. Whether a schedule, entry, or other portion of a return or claim for refund is a substantial portion is determined by comparing the length and complexity of, and the tax liability or refund involved in, that portion to the length and complexity of, and tax liability or refund involved in, the return or claim for refund as a whole.

Subparagraph (2) of section 301.7701(b) establishes minimum amounts required for a schedule, entry or other part of a return to be considered a substantial portion of the return:

For purposes of applying the rule of paragraph (b)(1) of this section, if the schedule, entry, or other portion of the return or claim for refund involves amounts of gross income, amounts of

deductions, or amounts on the basis of which credits are determined which are—

 (i) Less than $2,000; or

 (ii) Less than $100,000, and also less than 20 percent of the gross income (or adjusted gross income if the taxpayer is an individual) as shown on the return or claim for refund,

then the schedule or other portion is not considered to be a substantial portion. If more than one schedule, entry or other portion is involved, they shall be aggregated in applying the rule of this subparagraph (2). . . .

The "length and complexity" portion of the regulation's test for whether or not there has been preparation of a substantial portion tracks the language of the committee reports.

### B. *Application of Statutory and Regulatory Scheme to the Case*

#### 1. Contentions of the parties

██ Mr. Goulding challenges the validity of Treasury Regulation § 301.7701-15(b)(3), in accordance with which he was deemed the preparer of the partners' returns and penalized for the understatements in them. As the sole preparer of the partnership return, Mr. Goulding provided copies of the partnership K–1 forms to the individual partners, who then entered (or whose own return preparers then entered) a single number (a deduction) on their own tax returns. Mr. Goulding argues that he cannot have "prepared" returns he never saw or touched, that he did not give advice to partners he never met or spoke with, and that in any case, he cannot be considered as having prepared a "substantial portion" of returns on which he is responsible for a single entry. Mr. Goulding also argues that he was not "compensated" by the partners, as required by the statutory definition of preparer.

Mr. Goulding contends that in deeming him the preparer of the partners' returns, the regulation is contrary to the statutory definition of preparer, to the Commissioner's own regulation defining "substantial portion," and to the intent of Congress as revealed in the legislative history. Under the statutory definition of preparer, Mr. Goulding cannot be the preparer of these returns unless he prepared a "substantial portion" of the returns. According to Mr. Goulding, the single entry on the partnership returns cannot constitute a "substantial portion." He argues that in promulgating a regulation which transforms a single entry into a "substantial portion," the Commissioner has exceeded his authority. In this regard, Mr. Goulding relies primarily on a passage from the legislative history which explains the intent behind the "substantial portion" language of the statute:

> Whether or not a portion of a return constitutes a substantial portion is to be determined by examining both the length and complexity of that particular portion of the return and the amount of tax liability involved. In a normal case, the filling out of a single schedule of a tax return would not be considered a substantial portion of that return unless that particular schedule was the dominant portion of the entire tax return.

H.R.Rep. No. 658, 94th Cong., 2d Sess. 275, *reprinted in* 1976 U.S.C.C.A.N. 3171. As noted above, the regulation defining substantial preparation also directs that length and complexity be taken into consideration. Mr. Goulding maintains that the single entry on a partner's return which reflects information from the partnership return cannot be considered a substantial portion of the partner's return under the "length and complexity" standard.

Mr. Goulding also points to the House Report's statement that "an individual who gives advice on particular issues of law or IRS policy relating to particular deductions or items of income will not have prepared a return with respect to those issues if the advice does not directly relate to any specific amounts which are to be placed on the return of the taxpayer." *Id.* Because "issues," "deductions," "items," and "amounts" are plural, Mr. Goulding argues that Congress did not intend that giving advice relating to a single amount or deduction result in preparer status. Moreover, Mr. Goulding argues that, in providing copies of the K–1 forms to the partners, he did

not "give advice" to them; in most cases he never spoke with them or even met them.

Finally, Mr. Goulding suggests that the regulation is in conflict with other provisions of the Internal Revenue Code. He argues that the other provisions regarding preparers cannot possibly apply to him. For example, he could not be required to sign the partners' returns or retain copies of them. A consistent construction of the definition of preparer, he argues, would exclude him from liability under section 6694 as well.[5]

The government argues that the legislative history makes clear that a person who supplies substantive information and advice relating to specific entries on a return may be treated as a preparer of that return even though someone else fills it out. *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 275, *reprinted in* 1976 U.S.C.C.A.N. 3171. The Regulations "apply that principle to a person in appellant's position, treating the preparer of a partnership return as the preparer of a partner's return if the information on the partnership return is directly reflected on, and constitutes a substantial portion of, the partner's return." Appellee's Br. at 20. The objective of the statutory scheme is to impose the penalty on the person who is responsible as a substantive matter for the way in which a return is prepared. Because the partnership pays no taxes itself, the purpose of the partnership tax return and the Schedules K–1 is to figure out the deductions or income that each partner may state on his return. Therefore, argues the IRS, appellant is directly responsible as a substantive matter for the partners' returns. Moreover, the IRS points out, there would be very little deterrent effect in penalizing the preparer

of the partnership return for that return alone. Therefore, the regulations are a reasonable method of carrying out the intent of Congress to deter improper preparation.

2. Analysis

In evaluating these contentions, we believe that one point must be central to our analysis. In drafting and in enforcing the regulation, the Commissioner has a duty to apply the intent of the Congress to a myriad of financial relationships and transactions. *See Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). In each instance, the relationship of the preparer and the taxpayer necessarily will differ. But the policy objective remains the same: to deter negligent conduct on the part of a person who prepares an analysis of financial data upon which the taxpayer will rely in stating a substantial part of his tax liability.

Here the government's position reflects both the congressional intent and the realities of the limited partnership relationship. Partnerships are hybrids—for some purposes they are entities separate from the partners, for other purposes they are aggregates of the individual partners. *See generally* 1 W. McKee, W. Nelson & R. Whitmire, *Federal Taxation of Partnerships and Partners,* ¶ 1.02 (2d ed. 1990). Under the Internal Revenue Code, partnerships are not taxpayers or taxable entities. When a partnership receives income, the partners record their share of that income on their individual returns and are taxed on it, whether or not that income is actually distributed to them. Partners also deduct partnership losses on their individual re-

---

5. Mr. Goulding also contends that K–1 Schedules are similar to forms W–2, forms 1099, and other informational forms. Mr. Goulding claims that the same logic which makes him the preparer of the partners' returns would make every employer the preparer of his employees' returns, and every bank the preparer of its depositors' returns. Here we note, however, that the Secretary's regulations specifically provide that a return of tax does not include "an informational statement on Form 990, any Form 1099 or similar form." § 301.7701–15(c)(ii).

He also asserts that the regulation results in unauthorized disclosure of the returns of the limited partners in violation of section 6103 of the Code. In fact, one of the limited partners in this case sued the Government for violation of his right to have his return kept confidential. *See Mindell v. United States,* 693 F.Supp. 847 (C.D.Cal.1988). As was held in that case, the disclosure of the returns of the limited partners was proper under the exception to confidentiality contained in section 6103(h)(4)(B).

turns. Partnerships are "entities for purposes of calculating and filing informational returns;" otherwise they "are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares." *United States v. Basye*, 410 U.S. 441, 448, 93 S.Ct. 1080, 1085, 35 L.Ed.2d 412 (1973). This arrangement means that "the calculation of income at the partnership level is nothing more than 'a method of centralizing a host of decisions that must be made uniformly for all partners, such as whether particular items received by the partnership constitute income or the return of capital, whether expenditures qualify as ordinary or necessary expenses of conducting the firm's business, and so on.'" *Estate of Newman v. C.I.R.*, 934 F.2d 426, 432–33 (2d Cir.1991) (quoting 3 B. Bittker & L. Lokken, *Federal Taxation of Income, Estates and Gifts*, ¶ 86.1.1 (2d ed. 1991)).

As the partnership is both entity and aggregate, the tax preparer's relationship to the partnership is necessarily dual—he is dealing with the partnership both as entity and as aggregate of partners. Appellant was retained to analyze the partnership operation; however, the analysis of the partnership operation was a making of decisions and calculations for all the individual partners, to whom the tax liability or deductions would flow through the partnership. These decisions and calculations were directly reflected on the returns of the partners; all the individual partners depended upon Mr. Goulding's analysis. Thus while appellant was retained by the partnership and compensated by the partnership,[6] in reality his work was for all the partners.

True, Mr. Goulding's work boiled down to one entry on each partner's return, but it represented a far more complicated analysis of partnership earnings—an analysis upon which the limited partners necessarily relied. Thus, Mr. Goulding's comparison of the Schedules K–1 to other informational forms is unconvincing. As appellee points out, normally it is "just a ques-

tion of fact how much a taxpayer has earned from wages or interest; a bookkeeper can prepare a Form W–2 or 1099 and the taxpayer who receives the form can check it against his own records." Appellee's Br. at 31. This is not true of Schedules K–1; because of the often complicated nature of a partnership return and partnership transactions, a partner cannot readily verify the information and calculations on the partnership return. Moreover, the Internal Revenue Code requires, as a general rule, that tax treatment of partnership items be determined at the partnership level, *see* 26 U.S.C. § 6221, and that an individual partner, on his own return, treat a partnership item in a manner which is consistent with the treatment of the item on the partnership return. *See* 26 U.S.C. § 6222.

Because appellant's analysis of the partnership's financial operations was in essence an analysis of income directly taxable to the partners and losses directly deductible by them, the regulation making him the preparer of their returns reflects the real relationship between Mr. Goulding and the partners. The compensation Mr. Goulding received for his legal service to the partnership is, given the relationship of the partners to the partnership, really from the partners. His relationship to the partnership and its members was very much the one Congress had in mind in its regulation of income tax return preparers.

We note, moreover, that under the regulation, only a "preparer" of a return—a person who meets the statutory definition of preparer with respect to a return—may be deemed to be the preparer of another return. If Mr. Goulding were the employee of the partnership, or had not received compensation for the partnership return, or had merely furnished mechanical assistance in the preparation of the partnership return, *see* 26 U.S.C. § 7701(a)(36), he could not, under the regulation, be deemed the preparer of the partners' return. The regulation thus preserves the congressional

---

**6.** Mr. Goulding also argues that because preparation of the partnership returns was not one of the duties agreed upon when his compensation

was fixed, he was not compensated for the preparation even of the partnership returns. We find little merit in this argument.

intention to distinguish between professional or commercial preparers on the one hand and employees, friends or relatives on the other.

Finally, we cannot accept Mr. Goulding's contention that, by deeming him the preparer of the partners' returns, the regulation is inconsistent with other uses of the term "income tax return preparer" in the Internal Revenue Code. None of the other statutory provisions governing the conduct of income tax return preparers applies in blanket fashion to all preparers. Rather, in each case application is expressly limited to those specified in regulations prescribed by the Secretary. *See* 26 U.S.C. § 6107(c); § 6109(a); § 6695(a), (b), (c), & (d). Thus, the statutory scheme reflects recognition of the fact that more than one person may be a preparer in respect to one return, and that not all provisions imposing duties on preparers will apply to all preparers.

In short, we conclude that the regulation "harmonizes with the plain language of the statute, its origin, and its purpose." *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). It was well within the Commissioner's authority to promulgate the regulation in question, and under the terms of that regulation, Mr. Goulding is properly considered the preparer of the limited partners' returns.

## C. *Negligence*

■ In his suit for refund of the penalties assessed against him under section 6694(a), Mr. Goulding bears the burden of proving an absence of negligent disregard of rules or regulations resulting in an understatement of tax liability. *See* Treas. Reg. § 1.6694–1(a)(5); *Brockhouse v. United States,* 749 F.2d 1248, 1251 (7th Cir. 1984). In determining whether a preparer's actions constitute negligence for the purposes of section 6692(a), the applicable standard is whether there was "a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Brockhouse,* 749 F.2d at 1251 (quoting *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir.1967),

*cert. denied,* 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968)). Under *Brockhouse,* the preparer is required to act as a reasonable, prudent person with respect to the information supplied to him. *Id.* at 1252. If the "information supplied would lead a reasonable, prudent preparer to seek additional information, it is negligent not to do so." *Id.*

On the partnership return prepared by Mr. Goulding, deductions were taken in respect to depreciation, legal fees, accounting fees and management fees. The district court found that these deductions resulted in the understatement of tax liabilities on the partners' returns. In our review, we evaluate the good faith and reasonableness of the positions taken by Mr. Goulding under the state of the law at the time the work was done. *See Judisch v. United States,* 755 F.2d 823, 829 (11th Cir. 1985).

### 1. Depreciation

■ It is a settled principle of tax law that the taxpayer's basis for depreciation cannot include contingent debt which is unlikely ever to be paid. *See Durkin v. C.I.R.,* 872 F.2d 1271, 1277 (7th Cir.) (citing *Estate of Franklin v. Commissioner,* 544 F.2d 1045 (9th Cir.1976)), *cert. denied,* 493 U.S. 824, 110 S.Ct. 84, 107 L.Ed.2d 50 (1989); Rev.Rul. 77–110, 1977–1 C.B. 58. Moreover, although limited partners may properly include in the basis of their partnership interest partnership debt for which they are personally at risk, debt which is contingent and unlikely to be paid is not included in that basis. In fact, purchases of property at prices far exceeding the fair market value, with financing by debt which is unlikely to be paid but somehow made to appear at risk, is the "classic tax shelter." *Durkin,* 872 F.2d at 1277.

■ Such a classic tax shelter is present here. Mr. Goulding depreciated the entire cost of the technologies purchased by the partnerships, including the portion of the cost which was to be paid only on a contingent basis. That is, in calculating depreciation deductions, he attributed to the technologies a basis of $21 million, of which

only $250,000 was unconditionally payable. The district court found that the remainder of the purchase price was far in excess of the fair market value and was unlikely ever to be paid. The record supports that determination.

Moreover, Mr. Goulding has not demonstrated, as he must in order to succeed in this appeal, that he had any reasonable ground for concluding that it was proper to depreciate the entire $21 million. Goulding claims that he reasonably relied on "appraisal letters." These letters or "market analyses" (Exhibits 14–26) did not purport to estimate the fair market value of the technologies, but appraised their *eventual market potential.*[7] The amount of income an asset *might* produce over its useful life is not in itself the fair market value of the property. Thus Goulding's reliance on these letters in depreciating the entire price of the technologies was unreasonable. It is true that a purchaser may make a bad bargain, and if he does, the price he pays, though above fair market value, is his basis. *See Estate of Franklin v. C.I.R.*, 544 F.2d 1045, 1049 (9th Cir.1976). However, here, the flimsiness of the appraisal letters and the contingent terms of the debt as set forth in the purchase agreements—agreements which Mr. Goulding helped draft—made it clear at the time Mr. Goulding prepared the partnership returns that the debt should not have been included in the basis of the technologies for depreciation. It was likewise clear that it was not proper to include the debt in the limited partners' bases in their partnership interests. Under the purchase agreements, unless the technologies achieved profitability within set time limits, the contingent portion of the

purchase did not have to be paid. As the district court found, there was no chance that these technologies would bring profit within the set time limits.

**2. Deduction of start-up costs**

■ Again, it is a well-established principle that partnerships may not deduct start-up costs as current business expenses, including amounts paid or incurred to organize a partnership or to promote the sale of (or to sell) an interest in a partnership. *See Fishman v. C.I.R.*, 837 F.2d 309, 312 (7th Cir.) (citing a "long line of decisions" holding that such expenses must be capitalized), *cert. denied,* 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988). This general rule, first developed in the caselaw, was added to the Internal Revenue Code in 1976. *See* 26 U.S.C. § 709. Thus Mr. Goulding was negligent in deducting legal fees incurred in connection with the drafting of private placement memoranda and other start-up costs. Again, having been closely involved in the start-up activities and in the drafting of the agreements and private placement memoranda, Mr. Goulding could not reasonably rely on how others characterized these costs. In short, Mr. Goulding has failed to carry his burden of demonstrating that he was not negligent in preparing the partnership returns.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

7. Not atypical is the "appraisal letter" for the "lozenge for subliminal discouragement of smoking," an invention purchased by Mercon for a total of $1,666,655:

> Dear Sirs:
> Based upon the number of cigarette smokers in the country according to figures provided by the U.S. Department of Health, Education, and Welfare (in excess of 50 million) and based upon the known fact that at least 10 per cent of these smokers desire to bread [sic] the habit, I can easily surmise that 10 per cent of the smoking population, or 5 million adults, would try Dr. White's lozenge designed to help break the

habit on at least one occasion during a one year period, which is a small amount of resolve at frequent intervals.

> Conversations with Dr. White [the inventor of the lozenge] have convinced me that the concept is logical and viable and that the profit margin can be substantial. If a profit of one dollar per unit sold is realized by the modest sales potential aforementioned, an evaluation of 5 million dollars can easily be placed upon this unique and desirable product.
> Very truly yours,
> Roger R. Larson