257 F.Supp.2d 1154 (2003)
James J. SCHNEIDER, CPA, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. IP01-C-0500 T/L.
United States District Court, S.D. Indiana, Indianapolis Division.
February 5, 2003.

*1155 ENTRY ON DEFENDANT'S AND PLAINTIFF'S CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE
TINDER, District Judge.
The Plaintiff, James J. Schneider, and the Defendant, the United States, both move for summary judgment on a refund claim arising out of a tax preparer's penalty assessed against Mr. Schneider. The government also moves to strike certain portions of the verified declarations of James C. Hoppel, Elizabeth Laskowski, and James J. Schneider. Having reviewed the submissions and arguments of the parties, the court now rules on all motions as explained below.

I. Facts[1]
Mr. Schneider, a licensed CPA and attorney, is owner and president of the accounting firm Schneider & Company, Inc., d/b/a James J. Schneider. He is the "executive reviewer" for the firm. Among his current employees are James C. Hoppel, an attorney and tax technical reviewer, and Elizabeth A. Laskowski, a CPA and technical reviewer, both of whom have submitted affidavits on behalf of Mr. Schneider. Brian D. Rhea, a CPA, was also an employee at the time of the events that gave rise to this suit.
William Conour, an attorney and sole practitioner at the time in question, is a former client of Mr. Schneider, whose preparation of his 1992 tax return resulted in the preparer's penalty challenged in this case. Mr. Conour's secretary, Carol Ski, acted as bookkeeper for his practice. She maintained a general ledger as a checkbook and a ledger to keep track of expenses paid out of office accounts. Mr. Conour used two bank accounts, a general office expense account and a client trust fund account. Because his practice was organized as a sole proprietorship, the office account was funded with his money and sometimes used to pay his personal expenses. However, the information regarding any check written from the general ledger or on Mr. Conour's office expense account was duly recorded by Ms. Ski in the ledger through the use of classification codes.
Mr. Schneider and his company were first hired to prepare Mr. Conour's tax returns in the late 1970s. Ms. Ski would keep the internal ledger and Mr. Schneider or a representative of his firmMr. Rhea at the relevant time periodwould visit Mr. Conour's office to obtain records in order to prepare adjusting journal entries, tax basis compilation financial statements and tax returns. Schneider and Company also performed a variety of other financial and accounting services for Mr. Conour.
It is uncontested that Mr. Conour had, in the past, purchased items, often in pairs, one or more of which he would give to his employees as in-kind compensation. The employees of Schneider and Company thus have received mink coats, diamond tennis *1156 bracelets, trips to Europe, and Mercedes Benz automobiles. For tax purposes, one-half of the double purchases was generally treated as a personal expense and the other halfpresumably the half given to the employee in questiontreated as inkind compensation deductible as a business expense.
The dispute in this case arises out of the preparation of Mr. Conour's 1992 tax return, and concerns the tax treatment of purchased artwork. Mr. Schneider has raised the defense that, in the first instance, he should not be considered the preparer of that returneven though he signed it as preparer. He instead points to his former employee Mr. Rhea, who allegedly performed a substantial part of the work on the return, as the preparer. The courts accepts, as a factual matter, the Plaintiffs contention that Mr. Rhea did perform a substantial amount of the work on the Conour return; but whether he is therefore the preparer for the purposes of the preparer penalty statute (26 U.S.C. § 6694) is a legal question, for determination by this court, which will be addressed in section IV of the entry.
For many years, Mr. Conour has collected original works of art by Indiana artists, which he hangs both in his home and at the office. In 1992 he purchased various paintings, among them "Playing by the Barn," an original watercolor by Otto Stark for $15,000; and "Talbot Street in the Snow," an original oil painting by T.C. Steele for $38,000.
Sometime during the preparation of his 1992 tax return, Mr. Conour inquired of Mr. Schneider whether he could in fact deduct the cost of the artwork (Mr. Rhea, the accountant "in charge" of Mr. Conour's return, had treated the artwork as a nondeductible capital expenditure in the financial records of Mr. Conour's practice). Mr. Rhea discussed the tax treatment of the artwork with his employer, Mr. Schneider, and informed him that in the previous year, apparently unknown to Mr. Schneider, Mr. Conour had deducted the entire cost of purchased artwork. Mr. Schneider testifies in his verified declaration that he knew, as a general rule, that the cost of artwork was not deductible. (Schneider Dec. ¶ 57.) He accordingly instructed Mr. Rhea to research the question and draft a letter to Mr. Conour explaining the correct treatment of artwork. The letter, dated April 26, 1993, and signed by Mr. Schneider states, "During 1992, you spent $99,530 on various works of art. We have reviewed the regulations and case law regarding the tax treatment of artwork and have determined that it should be capitalized rather than expensed or depreciated." (Statement of Material Fact ("SMF") at 60.) Mr. Conour subsequently asked Mr. Schneider under what circumstances a taxpayer could deduct the cost of artwork. Mr. Schneider replied that if given as in-kind employee compensation, similar to the Mercedes Benz or the diamond bracelets, the artwork would qualify as a deductible business expense. (SMF at 62-63.)
The Plaintiff then claims that, pursuant to these discussions, "with this full understanding, Conour deducted one-half of the cost of the artwork as a deductible expense." (Schneider Dec. ¶ 65.) Given that Mr. Conour is the taxpayer, and not the tax preparer, the meaning of this statement is quite obscure. It is above all unclear as to what specific actions on the part of Mr. Conour this statement is meant to refer. Nor does Mr. Schneider state the basis of his knowledge as to Mr. Conour's deduction or understanding of the tax issues, except for the inadequate prefatory assertion that the declaration is made on first-hand knowledge of all facts and allegations. "Even if the affidavit.... includes a blanket statement within the first few paragraphs to the effect that *1157 the affiant has personal knowledge of the facts set forth in the affidavit.... a statement that the affiant believes something is not in accordance with [rule 56(e)]." Pace v. Capobianco, 283 F.3d 1275, 1279 (11th Cir.2002). As with many of the factual averments in Plaintiffs submitted declarations, this statement is vague, conclusory, and without foundation as to personal knowledge. See Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir.1999) (statements outside affiant's personal knowledge did not meet requirements of Federal Rule of Civil Procedure 56(e)). Defendant's motion to strike Schneider Declaration paragraph 65 is therefore GRANTED.[2]
In fact, the artwork in question was not given as in-kind compensation, and Mr. Conour denies ever having told Mr. Schneider or anyone else to take an office expense deduction on that basis. (Conour Dec. ¶ 17.) In his protest letter (Def.Ex.19) and administrative appeal (Def.Ex.21), Mr. Schneider claimed that Mr. Conour specifically told him that the artwork was in-kind compensation. However, he now seems to have retreated from that position. First, absent from Mr. Schneider's verified declaration is any allegation that Mr. Conour said to him that the artwork was given as in-kind payment. Mr. Schneider relates that Mr. Rhea characterized the deduction as an office expense in accordance with Mr. Conour's instructions (Schneider Dec. ¶ 67), yet he fails to provide any foundation for his knowledge of communications between Mr. Conour and Mr. Rhea. See Stagman, F.3d at 995. Second, Mr. Schneider claims that Mr. Conour accepted the tax basis financial statements without objection in June of 1993 (Schneider Dec. ¶ 70); but while Mr. Conour's failure to correct the financial statements may indicate complicity on his part, if indeed he read the statements, it is not a positive confirmation that the artwork was given to employees. Third, Mr. Schneider makes vague references to discussions he had with Mr. Conour regarding the tax treatment of the artwork (Schneider Dec. ¶¶ 66, 72), but there is no indication those statements refer to anything other than Mr. Schneider's clarification of the tax laws upon Mr. Conour's original inquiry.
Thus, as the record stands, there is no properly supported evidence to show that Mr. Conour expressly told Mr. Schneider or Mr. Rhea that the artwork was given as compensation to his employees. Nonetheless, viewing the record in the light most favorable to the Plaintiff, it does seem as if there were some direction from Mr. Conour to take the deduction after having been informed of the sole basis upon which the artwork could be deducted. Certainly, based on Mr. Conour's past practice and failure to object to the treatment of the artwork on the tax basis financial statements, or on the return itself, it was not unreasonable for Mr. Schneider to believe that Mr. Conour had used the artwork to pay his employees. Whether he needed to conduct any further inquiry is another question, however, dealt with in section IV.
On October 14, 1993, Mr. Schneider signed Mr. Conour's 1992 tax return claiming a deduction in the amount of $49,767.00exactly one-half the total cost of the artworkcharacterized as an office expense. Mr. Conour's return was selected by the Internal Revenue Service for an audit, performed by Revenue Agent Bob Shanahan. The 1992 artwork deduction was disallowed because the artwork had no determinable useful life. Mr. Conour, no longer represented by Schneider and Company, *1158 agreed to the increased tax liability that resulted from the adjustment to his 1992 return. For his involvement in the preparation of the tax return, Mr. Schneider was assessed a return preparer penalty under 26 U.S.C. § 6694(b)(2). During the course of the administrative proceedings, Mr. Schneider was invited to submit information with respect to the recommended preparer penalty and was allowed to file a protest letter and take administrative appeal of the penalty recommendation.[3] On October 2, 1995, the fine was assessed. On April 25, 1996, the Plaintiff paid the penalty in full, and on June 16, 1996, he received notice that his appeal was denied. On April 12, 2001, Mr. Schneider instituted the present action against the Government.

II. Defendant's Motion to Strike
The Government has moved to strike various portions of the verified declarations submitted by James C. Hoppel, Elizabeth Laskowski, and James J. Schneider on the grounds they are based on inadmissible hearsay, constitute legal conclusions, or lack foundation as to personal knowledge, and thus do not meet the requirements of Federal Rule of Civil Procedure 56(e) (stating that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.")
The court agrees with the Government that the verified declarations submitted on behalf of the Plaintiff are seriously deficient. They frequently contain reports of conversations or communications to which the affiant was not a party, and lack any indication as to how the affiant learned of the information alleged in the statement. Moreover, the burden is on the Plaintiff to show circumstances indicating knowledge, not on the Defendant to refute a bald, unsupported assertion of competence to testify. See, e.g., Pace v. Capobianco, 283 F.3d 1275, 1279 (11th Cir. 2002) (blanket assertion of personal knowledge inadequate); Box v. A & P Tea Co., 772 F.2d 1372, 1378 (7th Cir.1985) (affidavit must affirmatively show personal knowledge). That burden has not been met with respect to the following paragraphs, which are either based on inadmissible hearsay or lack foundation as to personal knowledge: Hoppel Declaration paragraphs 14, 52, 53, 54, 58, 60, 61, 62, 63, 67, 70, 72; Laskowski Declaration paragraphs 53, 54, 60; Schneider Declaration paragraph 53, and paragraph 66 to the extent it purports to describe conversations between Mr. Rhea and Mr. Conour.[4] Accordingly, as to these paragraphs, Defendant's motion to strike is GRANTED.
The Defendant also argues that certain of the Plaintiffs declarations state legal conclusions, specifically on the question of who is considered the preparer of Mr. Schneider's tax return. See Liberies v. Cook County, 709 F.2d 1122, 1129 (7th Cir.1983) (affidavit stating legal conclusions not entitled to consideration). In this regard, any statement purporting to state a conclusion with regards to who as a matter of law is the preparer of the tax return is inadmissible. For this reason, the Defendant's motion to strike Hoppel Declaration paragraphs 10, 11, 12; Laskowski Declaration paragraphs 10, 11, 12; and Schneider Declaration paragraphs 10, 11, 12 is GRANTED. However, any statement which simply claims that Mr. Rhea *1159 helped prepare the Conour tax return, without concluding that he is therefore the tax preparer for purposes of the penalty statute, is not objectionable. Hoppel Declaration paragraphs 13, 47; Laskowski Declaration paragraph 13; and Schneider Declaration paragraph 13 all contain statements of this type. Thus the Defendant's motion to strike these paragraphs is DENIED.
Finally, Hoppel Declaration paragraph 64, opining that "Conour and Rhea could have characterized the [artwork] deduction as any form of expense since the basic character of the expense was that of a deductible item" (Hoppel Dec. ¶ 64) is also defective. This statement is either the proper subject of an expert opinion on a topic on which the affiant has not yet been qualified; or it states a legal conclusion as regards the correct description of a deductible item on a tax return. The court need not decide which; in either case it is inadmissible and Plaintiffs motion to strike with respect to that paragraph is therefore GRANTED.

III. Summary Judgment Standard
The court must grant summary judgment if there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The standard for summary judgment is the same as that of a directed verdict, that is, summary judgment is warranted where no rational jury or other trier of fact could render a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Colosi v. Electri-Flex Co., 965 F.2d 500, 504 (7th Cir.1992). A "metaphysical doubt" regarding the existence of a material fact will not defeat a motion for summary judgment, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, the moving party need not positively disprove the nonmovant's case, but may prevail by "pointing out to the district court" a lack of supporting evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
Where, as here, the parties have filed cross-motions for summary judgment, the court's review of the record "requires that [it] construe all inferences in favor of the party against whom the motion under consideration is made." Metropolitan Life Ins. Co. v. Johnson, 297 F.3d 558, 561-562 (7th Cir.2002) (citation omitted). The court will begin with consideration of the Government's motion, and, therefore, will draw all reasonable inferences in favor of the Plaintiff.

IV. Discussion

A. The Preparer of the Return
The Plaintiff proffers for the first time the defense that he should not be deemed the preparer of the 1992 Conour tax return under the applicable statutes and regulations. Even assuming this argument is not waived for failure to raise it in the administrative proceedings, see True v. United States, 190 F.3d 1165, 1173 (10th Cir.1999), it has no merit.[5] Mr. Schneider is both the signer of the return and employer of Mr. Rhea, and under the statutory scheme he is without question the lawful preparer of the return.
Title 26 United States Code section 7701(36)(A) defines the term "income tax preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax[.] For purposes of the preceding *1160 sentence, the preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return[.]" Because Mr. Schneider "employs one or more persons to prepare for compensation" a tax return, he falls within the statutory definition of a preparer. For that reason, it is irrelevant whether or not he assisted in the preparation of a substantial portion of the 1992 Conour return; the "substantial portion" language modifies the phrase "person[s] who prepare for compensation," and has no bearing on an employer's status as a preparer. Rather, being an employer of one or more persons who prepare a tax return for compensation is sufficient to qualify one as an income tax preparer. As the Government argues, any other reading would render the employer prong of the disjunctive definition of "income tax preparer" superfluous. The Plaintiffs argument simply ignores this part of the statute.
The Defendant claims that Mr. Rhea prepared a substantial portion of the return and so he should be considered the legal preparer. Even assuming Defendant is factually correct about the respective contributions of Mr. Rhea and Mr. Schneider, that possibility is blocked by the relevant regulations. Specifically, the regulations to 26 U.S.C. § 6694 (providing for the preparer penalty) address the accounting firm context in which many persons may have assisted in the preparation of a single return. Section 1.6694-2 provides that a "signing preparer" is "any preparer who signs a return of tax or claim of refund as a preparer." Since Mr. Schneider signed Mr. Conour's 1992 tax return, and since, as an employer of tax preparers, he fits within the tax code's definition of a preparer, see 26 U.S.C. § 7701(36)(A), Mr. Schneider is plainly a "signing preparer." And Treasury Regulation section 1.6694-1(b)(2) declares that "if a signing preparer is associated with a firm, that individual, and no other individual associated with the firm, is a preparer with respect to the return or claim for the purposes of section 6694." Thus, Mr. Rhea cannot be considered the tax preparer by virtue of the fact that his employer Mr. Schneider, associated with the same firm, signed the return.[6] The statutory definition of income tax preparer, read in conjunction with the regulations to section 6694, conclusively answers the question of who shall be deemed the preparer as between a signing and non-signing member of a firm. The Plaintiff does not contend these regulations are invalid, see Goulding v. United States, 957 F.2d 1420, 1423 (7th Cir.1992) (treasury regulations presumptively valid so long as reasonable) (citations omitted), and appropriately so, for they simply make clear that a professional preparer who signs a tax return may not avoid a preparer penalty by casting blame on his or her employees. Mr. Schneider's belated attempt to do so cannot help him *1161 escape liability for any deficiencies in the return he signed.

B. Intentional Disregard of a Rule or Regulation
The parties do not disagree about the law that applies to the Plaintiffs case. He was assessed a preparer penalty under 26 U.S.C. § 6694(b)(2) for "intentional disregard of rules or regulations" by a tax preparer that result in "any part of any understatement of liability with respect any return or claim for refund." The regulations further define the statutory phrase "intentional disregard of a rule or regulation": "[A] preparer is considered to have.... intentionally disregarded a rule or regulation if the preparer takes a position on the return or claim for refund that is contrary to a rule or regulation and the preparer knows of.... the rule or regulation in question." Treas. Reg. § 1.6694-3(c)(1). As with the Internal Revenue Service's assessment of tax deficiencies, such penalties are presumptively valid, see United States v. Running, 7 F.3d 1293, 1297 (7th Cir. 1993), and the Plaintiff bears the burden of proving that he did not intentionally disregard a rule or regulation. Treas. Reg. § 1.6694-3(h)(1).
The Government argues that by taking a $49,765.00 office expense deduction for the purchased artwork on Mr. Conour's 1992 tax return, Mr. Schneider intentionally disregarded Revenue Ruling 68-232,[7] which states that fine art may not generally be expensed or depreciated.[8] The Plaintiff responds that he took the deduction not because he thought that the artwork qualified as a depreciable asset, but because he justifiably believed Mr. Conour had given the artwork as in-kind compensation.[9]
As discussed in section I of the opinion, the court does not question that Mr. Schneider had some basis for his belief with regards to the artwork. The issue, rather, is whether Mr. Schneider could rely on the representations, either explicit or implicit, made to him or his employees by Mr. Conour with respect to the payment of artwork. Treasury Regulation section 1.6694-1(e)(1) concerns the preparer's duty to make further inquiry for purposes of determining a violation under 26 U.S.C. § 6694(b):
[T]he preparer generally may rely in good faith without verification upon information furnished by the taxpayer. Thus, the preparer is not required to audit, examine or review books and records, business operations, or documents or other evidence in order to verify independently the taxpayer's information. However, the preparer may not ignore the implications of information furnished to the preparer or actually known by the preparer. The preparer must make reasonable inquiries if the information as furnished appears to be incorrect or incomplete.
*1162 The court believes that given the information known to Mr. Schneider at the time he prepared Mr. Conour's 1992 tax return, he was under a duty to inquire of Mr. Conour as to the nature and specifics of the claimed artwork deduction. From the facts in evidence it appears that Mr. Schneider inferred the payment of the artwork from his explanations of the tax laws, as well as Mr. Conour's past practice and failure to object to the tax basis financial statements. That inference was made on the basis of incomplete information. At a minimum, Mr. Schneider was required to seek Mr. Conour's assurance that the artwork was indeed given as in-kind compensation and that documentation existed as to the pieces of art which added up to the claimed $49,767.00 expense.[10] Unlike Mr. Conour's previous in-kind payments, there is no suggestion that the artwork here came neatly packaged in pairs, or even a series, so that a gift of some fraction of it could be valued at precisely half the total. Thus, the fact that the claimed deduction was for exactly half the total cost of the artwork should have alerted Mr. Schneider to a potential irregularity. Because Mr. Schneider did not pursue the reasonable inquiry imposed by law under the circumstances, his reliance on the (incomplete) information furnished by Mr. Conour does not excuse his section 6694(b) violation.
The Government maintains that Mr. Schneider intentionally disregarded Revenue Ruling 68-232 (prohibiting expensing or depreciating of fine art) on the grounds that, on the tax return, he characterized the artwork as a business office expense. Whether the Plaintiff is considered to have deliberately violated this Revenue Ruling or the more general statutory prohibition on deduction of personal expenses, see 26 U.S.C. § 262 (disallowing deduction for "personal, living, and family expenses"), the end result is the same. In preparing a return that contained a business expense deduction for fine art purchased for the personal collection of the taxpayer, Mr. Schneider intentionally disregarded tax law as deeply established as the federal tax code itself.

V. Conclusion
Mr. Schneider has failed to raise a genuine issue of material fact as to both his compliance with the tax laws regarding the deductibility of artwork and his fulfillment of his duty of reasonable inquiry as a tax preparer, and therefore the Defendant's motion for summary judgment will be GRANTED. The Plaintiffs arguments in support of his own motion for summary judgment are merely the converse of the reasons he unsuccessfully contends that the Defendant should not prevail on its motion. Plaintiffs motion therefore will be DENIED.
NOTES
[1] The facts detailed in this section are agreed to by the parties unless otherwise noted. This section nevertheless omits certain details that the court deems immaterial in light of its subsequent legal conclusions.
[2] The Defendant's motion to strike as to the remaining paragraphs will be passed on in the following section.
[3] At no time during these proceedings did Mr. Schneider assert the defense that he was not, in fact, the preparer of the return.
[4] The court notes that Defendant's motion to strike paragraph 65 of the Schneider Declaration has already been discussed, see supra at
[5] It is remarkable that Mr. Schneider's vigorous advocacy of his position at the administrative level, (See Def.'s Exs. 15 (November 4, 1994 letter), 19 (June 30, 1995 protest letter), 21 (November 9, 1995 appeals letter)), contains not a hint of his current defense that he did not prepare the return.
[6] The Plaintiff cites Goulding v. United States, 957 F.2d 1420, 1425 (7th Cir.1992) for the proposition that "[w]here more than one person makes substantive contributions to the return, the definition of preparer limits liability to those who prepare a `substantial portion' of the return." The context of that case shows that the conflict with 26 U.S.C. § 7701(36)(A) and Treasury Regulation section 1.6694-1 (b)(2) is merely apparent. The issue there was whether a person who did not sign the individual partners' returns, but did prepare a partnership return on which those partners relied for their individual returns, could be considered a tax preparer of the partners' returns for the purposes of assessing a preparer penalty. There was no contest, therefore, between an employer who signed a return and an employee who performed work on that return. That is the situation here, however. And as the signing employer, the Plaintiffs defense that he did not prepare the return fails as a matter of law.
[7] A revenue ruling is included within the terms "rules and regulations" contained in 26 U.S.C. § 6694(b)(2). See Treas. Reg. § 1.6694-3(0.
[8] Revenue Ruling 68-233 provides, in pertinent part: "A valuable and treasured art piece does not have a determinable useful life. While the actual physical condition of the property may influence the value placed on the object, it will not ordinarily limit or determine the useful life. Accordingly depreciation of works of art is not allowable."
[9] Although for the purposes of summary judgment the court accepts Mr. Schneider's statement of his reasons for taking the deduction, it is fair to point out that his classification of the deduction as an "office expense" (and not wages) on the return raises concerns as to his credibility on this matterregardless of whether it is acceptable to describe a valid deduction in any way one chooses.
[10] Cf. Treas. Reg. § 1.6694-1(e)(2) (illustrative example to 1(e)(1)) ("The preparer did not ask for underlying documentation of the medical expenses but inquired about the existence of travel and entertainment records. The preparer was reasonably satisfied by the taxpayer's representations that the taxpayer had adequate records (or other sufficient corroborative evidence) for the deduction of $5,000 for travel and entertainment expenses. The preparer is nsot subject to a penalty under section 6694.") Hssere, by contrast, Mr. Schneider sought no such reassurance as to the existence of records or any other corroborative evidence of the in-kind payment of the artwork.